ORAL ARGUMENT NOT YET SCHEDULED

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Nos. 12-3037, 13-3060

---

IN RE: ANDRE WILLIAMS, Petitioner

---

On Motion for Authorization for United States District Court for the District of Columbia to Consider a Second or Successive Petition Under 28 U.S.C. § 2255

---

## Supplemental Brief of Petitioner Andre Williams

---

Justin S. Antonipillai*
Katharine C. Hinkle
Colin A. B. Holmes
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Justin.Antonipillai@aporter.com
(202) 942-5000

*Counsel for Petitioner*
*Andre Williams*

*Appointed by this Court

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### Parties and Amici

All parties, intervenors, and *amici* appearing in the underlying criminal case and before this Court are listed in the Brief of Petitioner Andre Williams filed in the lead case, No. 12-3037, on June 14, 2013, Dkt. No. 1441483 ("Pet'r's *Graham* Br."). *See* Pet'r's *Graham* Br. i.

### Rulings Under Review

Mr. Williams seeks authorization to file a second or successive petition under 28 U.S.C. § 2255 because his sentence, which was imposed by the United States District Court for the District of Columbia on April 21, 1994, Joint Appendix ("J.A." ) 257, No. 12-3037, Dkt. No. 1441484, and memorialized in a judgment entered on May 9, 1994, J.A. 407-10, is unconstitutional under *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

### Related Cases

This matter has not previously been before this Court. On July 29, 2013, this Court consolidated the instant proceeding with Case No. 12-3037, Mr. Williams's pending motion for authorization to file a second or successive petition under 28 U.S.C. § 2255 based on *Graham v. Florida*, 130 S. Ct. 2011 (2010). Additional related cases are set forth in Mr. Williams's *Graham* Brief. *See* Pet'r's *Graham* Br. i-iii.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Williams respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(2) because argument may significantly assist the Court in determining the issues presented.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

STATEMENT REGARDING ORAL ARGUMENT ............................. ii

TABLE OF AUTHORITIES ......................................................... v

GLOSSARY ...................................................................... ix

STATEMENT OF JURISDICTION ............................................... 1

STATUTES AND REGULATIONS ............................................... 1

STATEMENT OF ISSUES ....................................................... 2

STATEMENT OF THE CASE .................................................... 3

SUMMARY OF ARGUMENT .................................................... 6

ARGUMENT ................................................................... 8

    I.     THIS PFA MOTION IS TIMELY. ....................................... 8

    II.    THIS COURT SHOULD GRANT THIS PFA MOTION. ................. 8

          A.    Mr. Williams Has Made At Least A *Prima Facie* Showing That *Miller* Meets The Three Elements For PFA. ..................... 9

               1.    The *Miller* rule is a new constitutional rule ................... 10

               2.    The *Miller* rule was previously unavailable. ................. 11

               3.    The Supreme Court made *Miller* retroactive by applying it retroactively to a case on collateral review.. 12

               4.    The Supreme Court made *Miller* retroactive because it is a substantive rule. ......................................... 13

               5.    The *Miller* rule is otherwise retroactive as a watershed rule of criminal procedure. ............................. 15

B.    Although Not Required At This Stage, Even A Cursory Glance At The Merits Of Mr. Williams's Claim Supports Granting PFA. ...........................................................................17

1.    Mr. Williams received a mandatory life without parole sentence.........................................................................18

2.    Mr. Williams was sentenced for juvenile conduct. ........19

CONCLUSION ...........................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM A:  STATUTES & REGULATIONS

ADDENDUM B:  UNPUBLISHED CASES & BRIEFS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alejandro v. United States,*
No. 13-2450 (2d Cir. July 22, 2013)....................................................................9

*Bennett v. United States,*
119 F.3d 468 (7th Cir. 1997) ......................................................................... 8-9

*Case v. Hatch,*
__ F.3d __, No. 11-2094, 2013 WL 1501521 (10th Cir. Apr. 12, 2013) .......8, 17

*Craig v. Cain,*
No. 12-30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013) (per curiam)................10

*Danforth v. Minnesota,*
552 U.S. 264 (2008)..........................................................................................12

*Graham v. Florida,*
130 S. Ct. 2011 (2010).................................................................................11, 20

*Griffith v. Kentucky,*
479 U.S. 314 (1987).........................................................................................12

*Harmelin v. Michigan,*
501 U.S. 957 (1991).........................................................................................11

*In re Evans,*
449 F. App'x 284 (4th Cir. 2011) ........................................................ 20-21, 22

*In re James,*
No. 12-287 (4th Cir. May 10, 2013)..................................................................9

*In re Landry,*
No. 13-247 (4th Cir. May 30, 2013)..................................................................9

*In re Morgan*, 713 F.3d 1365 (11th Cir.), *reh'g en banc denied*, 717 F.3d
1186 (11th Cir. 2013).........................................................................................9

*Authorities upon which we chiefly rely are marked with asterisks.

*In re Smith*,
285 F.3d 6 (D.C. Cir. 2002) ................................................................8

*In re Stone*,
No. 13-1486 (2d Cir. June 7, 2013) ...................................................9

*In re Wang*,
No. 13-2426 (2d Cir. July 16, 2013) ...................................................9

*In re Wong*,
No. 13-1670 (2d Cir. May 29, 2013) ...................................................9

*In re Zambrano*,
433 F.3d 886 (D.C. Cir. 2006) ...........................................................9

*Jackson v. Hobbs*,
132 S. Ct. 548 (2011) ........................................................................12

*Johnson v. United States*,
720 F.3d 720 (8th Cir. 2013) .......................................................9, 10

*Lloyd v. United States*,
407 F.3d 608 (3d Cir. 2005) .............................................................16

*Miller v. Alabama*,
132 S. Ct. 2455 (2012)... 1, 2, 3, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22

*Ochoa v. Sirmons*,
485 F.3d 538 (10th Cir. 2007) .........................................................17

*Penry v. Lynaugh*,
492 U.S. 302 (1989), *overruled on other grounds by Atkins v. Virginia*,
536 U.S. 304 (2002) .....................................................................13, 14

*Roper v. Simmons*,
543 U.S. 551 (2005) ..........................................................................11

*Schriro v. Summerlin*,
542 U.S. 348 (2004) ..........................................................13, 14, 15, 16

*Teague v. Lane*,
489 U.S. 288 (1989) (plurality opinion) ....................................10, 12

*Tyler v. Cain*,
    533 U.S. 656 (2001)................................................................13

*United States v. Booker*,
    543 U.S. 220 (2005)..........................................................5, 7, 18

*United States v. Clark*,
    8 F.3d 839 (D.C. Cir. 1993)................................................19

*United States v. Floyd*,
    945 F.2d 1096 (9th Cir. 1991) *overruled on other grounds by United
    States v. Atkinson*, 990 F.2d 501 (9th Cir. 1993)................................19

*United States v. Lopez*,
    938 F.2d 1293 (D.C. Cir. 1991)................................................19

*United States v. Thomas*,
    114 F.3d 228 (D.C. Cir. 1997)......................................5, 19, 20, 21

*Welch v. United States*,
    604 F.3d 408 (7th Cir. 2010)................................................14, 15

*Whorton v. Bockting*,
    549 U.S. 406 (2007)................................................................15

*Woodson v. North Carolina*,
    428 U.S. 280 (1976)................................................................11

**STATUTES**

21 U.S.C. § 841................................................................4

21 U.S.C. § 846................................................................4

18 U.S.C. § 1962................................................................4

28 U.S.C. § 2244................................................................1, 9

28 U.S.C. § 2255................................................................1, 2, 8, 9, 10, 17

18 U.S.C. § 3553................................................................1, 18

# OTHER AUTHORITIES

Brief of Movant
*In re Evans*, 449 F. App'x 284 (4th Cir. 2011) (No. 11-194),
2011 WL 3645666 ...........................................................................21

D.C. Cir. R. 28(a)(5) .........................................................................1

Fed. R. App. P. 25(a)(2)(C) ...........................................................2, 8

Fed. R. App. P. 28(f) .........................................................................1

Government's Response,
*In re Stone*, No. 13-1486 (2d Cir. May 30, 2013) ......................10, 14

Government's Response,
*In re Wang*, No. 13-2426 (2d Cir. July 3, 2013).............................10

Government's Response,
*Johnson v. United States*, 720 F.3d 720 (8th Cir. Feb. 22, 2013) (No. 12-3744) ..................................................................................... 9-10

United States Sentencing Commission, Guidelines Manual (1992 ed.)....................1

United States Sentencing Commission, Guidelines Manual,
§ 5A (1992 ed.) ..........................................................................5, 18

United States Sentencing Commission, Guidelines Manual,
§ 5H.1.1 (1992 ed.) .........................................................................18

United States Sentencing Commission, Guidelines Manual,
§ 5H.1.12 (1992 ed.) .......................................................................19

# GLOSSARY

| Abbreviation | Full Term |
|---|---|
| **AEDPA** | **Anti-Terrorism Effective Death Penalty Act** |
| **COA** | **Certificate of Appealability** |
| **J.A.** | **Joint Appendix** |
| **PCP** | **Phencyclidine** |
| **PFA** | **Pre-Filing Authorization** |
| **RICO** | **Racketeer Influenced Corrupt Organization** |
| **Supp. App.** | **Supplemental Appendix** |
| **USP Atwater** | **United States Penitentiary Atwater** |

## STATEMENT OF JURISDICTION

Mr. Williams seeks authorization to file a second or successive petition under 28 U.S.C. § 2255 based on *Miller v. Alabama*, 132 S. Ct. 2455 (2012). Section 2255(h) of Title 28 provides that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals." Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 2244(b)(3) and 2255(h).

## STATUTES AND REGULATIONS

Pursuant to Federal Rule of Appellate Procedure 28(f) and D.C. Circuit Rule 28(a)(5), except for the relevant portions of 18 U.S.C. § 3553 and the 1992 edition of the United States Sentencing Commission's Guidelines Manual, which are set forth in the attached Addendum A, all applicable statutes, etc., are contained in Addendum A to Mr. Williams's *Graham* Brief.

# STATEMENT OF ISSUES

I.  Whether Mr. Williams's Pre-Filing Authorization Motion ("PFA Motion") satisfies the requirements of the "prison mailbox rule," Fed. R. App. P. 25(a)(2)(C), such that it was timely filed under 28 U.S.C. § 2255(f)(3).

II. Whether Mr. Williams has made a *prima facie* showing that the holding in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which categorically barred the imposition of mandatory life without parole sentences for juvenile offenders, announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2255(h)(2), such that Mr. Williams should be authorized to file a second or successive Section 2255 petition.

## STATEMENT OF THE CASE

Mr. Williams's *Graham* Brief substantially sets forth the proceedings relevant to this case.  *See* Pet'r's *Graham* Br. 4-5.

In addition, on June 25, 2012, the Supreme Court decided *Miller v. Alabama*, 132 S. Ct. 2455 (2012).  On July 12, 2012, Mr. Williams filed a notice of authority regarding *Miller* in Case No. 12-3037.  Dkt. No. 1383604.

On June 21, 2013, Mr. Williams filed a PFA motion based on *Miller* through undersigned counsel, which was docketed on June 24, 2013, as Case No. 13-3060. *See also* Pet'r's *Graham* Br. 11 n.7 (noting that, because Mr. Williams's *Graham* PFA motion was filed before *Miller* was decided, he would file a separate PFA motion based on *Miller*).  On June 24, 2013, out of an abundance of caution, Mr. Williams filed a Section 2255 petition based on *Miller* with the District Court (Case No. 13-cv-956), and requested that it be held in abeyance pending the disposition of this proceeding.  Supp. App. 70.

On June 28, 2013, the Government moved to consolidate Case Nos. 12-3037 and 13-3060.  Dkt. No. 1444240.  This Court granted that motion on July 29, 2013, and directed supplemental briefing on the issues identified above.  Dkt. No. 1448978.

## STATEMENT OF FACTS

As detailed previously, Mr. Williams was convicted for his involvement in a drug-related conspiracy that he joined as a fifteen-year-old. *See* Pet'r's *Graham* Br. 5-8. In 1991, the Government indicted Mr. Williams and twenty-three other individuals for operating a drug-distribution ring from approximately May 1983, when Mr. Williams was fourteen, through March 1991, when he was twenty-one. *See id.* at 5-7. The Government charged Mr. Williams with ten drug-related offenses. *See id.* at 6-7.

The jury convicted Mr. Williams of only two of those offenses: conspiracy to distribute and possess drugs, in violation of 21 U.S.C. §§ 841 and 846; and conspiracy to participate in a Racketeer Influenced and Corrupt Organization ("RICO"), in violation of 18 U.S.C. § 1962(d). *See id.* at 7-8. Mr. Williams's RICO conspiracy conviction was based on four predicate acts: Racketeering Act 1 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances from 1983 to 1991); Racketeering Act 5 (Possession with Intent to Distribute PCP, Cocaine, and Marijuana on November 14, 1984); Racketeering Act 33 (Possession with Intent to Distribute PCP and Marijuana on March 24, 1988); and Racketeering Act 40 (Maintenance of Premises to Manufacture, Store, or Use a Controlled Substance). *See id.* The jury acquitted Mr. Williams of the remaining charges, including seven drug offenses alleged to have occurred after he turned

eighteen.  *See id.* at 8.  This included Count 24, which alleged the same conduct as Racketeering Act 33.  *See id.*

On April 21, 1994, the District Court sentenced Mr. Williams under the then-mandatory Federal Sentencing Guidelines ("Guidelines").  Supp. App. 69; *United States v. Booker*, 543 U.S. 220, 233 (2005).  The court applied an offense level of 43, for which the mandatory sentence was life in prison without parole.  Supp. App. 69; United States Sentencing Commission, Guidelines Manual ("USSG"), § 5A (1992 ed.).  As addressed below, at that time, the Guidelines did not permit the District Court to consider age as an appropriate mitigating factor.

On appeal, this Court affirmed Mr. Williams's convictions, but vacated the jury's verdict as to Racketeering Act 40.  *United States v. Thomas*, 114 F.3d 228, 274 (D.C. Cir. 1997).

## SUMMARY OF ARGUMENT

The Supreme Court held in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), that the Eighth Amendment categorically forbids mandatory life without parole sentences for offenses committed by juveniles. Mr. Williams is serving a mandatory life without parole sentence that constitutes cruel and unusual punishment under *Miller* for his involvement in a family-directed drug conspiracy that he apparently became embroiled in as a fifteen-year-old child.

This Court should grant the limited relief of authorizing the District Court to consider Mr. Williams's *Miller* claim. Mr. Williams makes a *prima facie* showing that *Miller* is a new, previously unavailable constitutional rule that the Supreme Court made retroactive to cases on collateral review. Indeed, the Second, Fourth, and Eighth Circuits have already granted pre-filing authorization ("PFA") based on *Miller*.

***First***, the *Miller* rule is new because it was not dictated by precedent; rather, the Court combined and extended cases prohibiting mandatory capital punishment and recognizing the diminished culpability of juveniles. ***Second***, this new rule was unavailable when Mr. Williams filed his first Section 2255 petition in 1998. ***Third***, the Court made the *Miller* rule retroactive by applying it to a case on collateral review. It is also retroactive as a substantive rule that prohibits a category of punishment, mandatory life without parole, for a class of persons,

juveniles.  Unlike procedural rules, which regulate only the manner of determining a defendant's culpability, the *Miller* rule alters the range of outcomes.  **Fourth**, even if it could be characterized as merely regulating procedure, the *Miller* rule would be retroactive as a watershed rule that implicates the fundamental fairness and accuracy of a proceeding.

This Court need not and should not address the merits of Mr. Williams's *Miller* claim in considering this PFA Motion.  Nevertheless, even a cursory glance at the merits supports granting PFA.  Mr. Williams was sentenced in 1994 under the then-mandatory, pre-*Booker* Guidelines, which did not permit the consideration of youth as an appropriate mitigating factor.  He was sentenced at offense level 43, which carried a mandatory sentence of life without parole, for his juvenile conduct. The jury acquitted Mr. Williams of each count based solely on adult conduct.  The only overt act necessary for Mr. Williams's drug conspiracy conviction was actively joining the conspiracy, which indisputably he did as a juvenile.  And his RICO Act conspiracy conviction was based on a standalone conspiracy count with the jury acquitting Mr. William of the underling adult conduct as a standalone offense.   Mr. Williams was sentenced to life imprisonment without parole in violation of *Miller*, and this Court should grant this PFA Motion.

# ARGUMENT

## I.  THIS PFA MOTION IS TIMELY.

Mr. Williams timely filed this PFA Motion through undersigned counsel on June 21, 2013, before the one-year statute of limitations ran on June 25, 2013.  *See* 28 U.S.C. § 2255(f)(3).  The prison mailbox rule is therefore inapplicable.  *See* Fed. R. App. P. 25(a)(2)(C).[1]

## II.  THIS COURT SHOULD GRANT THIS PFA MOTION.

In assessing a PFA Motion, this Court considers "whether an application for authorization to file a second Section 2255 motion in the district court makes a prima facie showing that the petitioner is entitled to relief . . . ."  *In re Smith*, 285 F.3d 6, 7 (D.C. Cir. 2002).  Under AEDPA, this is the first of two "gates" through which a federal prisoner must pass to obtain a ruling on the merits.  If the Court of Appeals finds that his PFA motion makes a *prima facie* showing that he has satisfied the statutory requirements, then it may authorize the district court to evaluate the petition.  *See id.* ("[O]nly the district court has jurisdiction to determine the merits of [a Section 2255] motion . . . .").  Courts of Appeals have made the *prima facie* showing a low hurdle, requiring "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court."  *Bennet v.*

---

[1] Mr. Williams respectfully notes that the briefing order for this brief may have carried over the prison mailbox rule issue from the briefing order for his *Graham* brief.  *See* Dkt. No. 1414443.

*United States*, 119 F.3d 468, 469-70 (7th Cir. 1997); *see also Case v. Hatch*, __

F.3d __, No. 11-2094, 2013 WL 1501521, at *11 & n.4 (10th Cir. Apr. 12, 2013).

## A. Mr. Williams Has Made At Least A *Prima Facie* Showing That *Miller* Meets The Three Elements For PFA.

This Court should grant this PFA Motion because it establishes, on a *prima*

*facie* basis, that it is premised on "a new rule of constitutional law, made

retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable." 28 U.S.C. § 2255(h)(2). In doing so, this Court should join the

Second, Fourth, and Eighth Circuits, which have granted PFA motions based on

*Miller v. Alabama*, 132 S. Ct. 2455 (2012), under the same standard. *See*

*Alejandro v. United States*, No. 13-2450 (2d Cir. July 22, 2013) (granting PFA to

file § 2255 petition); *In re Wang*, No. 13-2426 (2d Cir. July 16, 2013) (same);

*Johnson v. United States*, 720 F.3d 720 (8th Cir. 2013) (same); *In re Stone*, No. 13-

1486 (2d Cir. June 7, 2013) (same); *In re Landry*, No. 13-247 (4th Cir. May 30,

2013) (granting PFA to file § 2254 state habeas petition); *In re James*, No. 12-287

(4th Cir. May 10, 2013) (same). *But see In re Wong*, No. 13-1670 (2d Cir. May

29, 2013) (denying PFA without referencing *prima facie* standard).[2]

Indeed, the United States has conceded in other cases that *Miller* is

retroactive on a *prima facie* basis. *See, e.g.*, Government's Response at 2,

---

[2] The Section 2244(b)(2) standards for state prisoners' PFA motions are equivalent
to the Section 2255(h) standards. *See In re Zambrano*, 433 F.3d 886, 887 n.1
(D.C. Cir. 2006).

*Johnson*, 720 F.3d 720 (8th Cir. Feb. 22, 2013) (No. 12-3744) ("Because the

United States agrees that [petitioner's] reliance on *Miller* makes . . . a prima facie

showing [under 28 U.S.C. § 2255(h)(2)], his motion should be granted and the case

certified for filing in the district court."); Government's Response at 1, *In re Wang*,

No.13-2426 (2d Cir. July 3, 2013); Government's Response at 6, *In re Stone*, No.

13-1486 (2d Cir. May 30, 2013).[3]

Mr. Williams has made a *prima facie* showing of the Section 2255(h)(2)

elements.

### 1.     The *Miller* rule is a new constitutional rule.

The Supreme Court's decision in *Miller* created a new constitutional rule.

"[A] case announces a new rule if the result was not *dictated* by precedent existing

at the time the defendant's conviction became final."  *Teague v. Lane*, 489 U.S.

288, 301 (1989) (plurality opinion).  The result in *Miller* was not dictated by

precedent when Mr. Williams's conviction became final in 1997.  Rather, the

*Miller* Court announced a new rule by combining and extending "two strands of

precedent."  132 S. Ct. at 2463.

---

[3] The Eleventh Circuit has denied a PFA motion based on *Miller*. *In re Morgan*, 713 F.3d 1365 (11th Cir.), *reh'g en banc denied*, 717 F.3d 1186 (11th Cir. 2013). However, Judge Wilson noted in a concurrence that it is "possible that *Miller* announces a quasi-substantive rule retroactive to cases on collateral review," 713 F.3d at 1369 (Wilson, J., concurring), which reinforces the *prima facie* basis for *Miller*'s retroactivity.  The Fifth Circuit has denied a motion to reconsider the denial of a COA based on the retroactive effect of *Miller*. *Craig v. Cain*, No. 12-30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013) (per curiam).  That result is not inconsistent with this Court joining the Second, Fourth, and Eighth Circuits and granting PFA based on a *prima facie* showing that *Miller* is retroactive.

The Court drew on *Roper v. Simmons*, 543 U.S. 551 (2005), which banned capital punishment for juveniles, and *Graham v. Florida*, 130 S. Ct. 2011 (2010), which banned life without parole sentences for juvenile, non-homicide offenders. From this precedent, the Court determined that "children are constitutionally different from adults" because they have "diminished culpability and greater prospects for reform."  132 S. Ct. at 2464.  The Court then drew on *Woodson v. North Carolina*, 428 U.S. 280 (1976), which recognized that a mandatory death sentence unconstitutionally "exclude[d] from consideration . . . the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind."  *Id.* at 304 (plurality opinion); 132 S. Ct. at 2467.  For the first time, the *Miller* Court "h[e]ld that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders."  132 S. Ct. at 2469.  Thus, the *Miller* rule is new.

### 2.     The *Miller* rule was previously unavailable.

Similarly, the *Miller* rule was previously unavailable to Mr. Williams.  Both at the time Mr. Williams's conviction became final in 1997 and when he filed his first Section 2255 petition in 1998, mandatory life without parole sentences were permissible for juvenile offenders.  *See Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (declining to extend *Woodson* beyond the context of capital punishment).

### 3. The Supreme Court made *Miller* retroactive by applying it retroactively to a case on collateral review.

The Supreme Court announced the *Miller* rule's retroactivity by applying it on collateral review. In *Miller*, the Supreme Court consolidated both Evan Miller's Alabama criminal case on direct appeal and Kuntrell Jackson's Arkansas criminal case, which became final in 2004 and was on collateral review in a state postconviction proceeding. *See* 132 S. Ct. at 2461-62; *Jackson v. Hobbs*, 132 S. Ct. 548 (2011) (mem.). The Court then applied the *Miller* rule to both cases, signaling that it applies both to non-final and final convictions, such as Mr. Williams's. *See* 132 S. Ct. at 2475. As the Supreme Court has held, new rules applied to defendants before the Court also apply to those similarly situated, because the "selective application of new rules violates the principle of treating similarly situated defendants the same." *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) (holding new rules apply retroactively to cases on direct review). "[O]nce a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Teague*, 489 U.S. at 300 (plurality opinion) (setting standards to determine when new rules apply retroactively on collateral review).[4]

---

[4] In *Danforth v. Minnesota*, 552 U.S. 264 (2008), the Court held that the states may "provide broader remedies for federal constitutional violations than mandated by *Teague*." *Id.* at 282, 291. The Court's evenhanded justice principle from *Griffith* and *Teague* therefore sets a floor but not a ceiling. At a minimum, the *Miller* rule must be applied on collateral review.

Accordingly, because the Court applied the *Miller* rule to a final conviction, evenhanded justice requires that it be applied to Mr. Williams's final conviction.

**4.    The Supreme Court made *Miller* retroactive because it is a substantive rule.**

The Supreme Court also can make a new rule retroactive to cases on collateral review through multiple cases, "if the holdings in those cases necessarily dictate retroactivity of the new rule." *Tyler v. Cain*, 533 U.S. 656, 666 (2001). Cases announcing substantive rules, such as those "prohibiting a certain category of punishment for a class of defendants because of their status or offense," necessarily apply retroactively. *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989) (opinion of O'Connor, J., for unanimous Court as to Section IV-A), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002). Substantive rules alter the range of outcomes of a criminal proceeding and thus "necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (citation and internal quotation marks omitted). On the other hand, procedural rules that "regulate only the manner of determining the defendant's culpability" are generally not retroactive because they merely raise the possibility of an unjust outcome. *Id.* at 353 (emphasis omitted).

The Supreme Court made *Miller* retroactive because the rule categorically bans a type of punishment, mandatory life without parole sentences, for a class of

defendants defined by status, juveniles. *See* 132 S. Ct. at 2460 ("We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment[] . . . ."); *Penry*, 492 U.S. at 330. As the United States recognizes, the *Miller* rule is substantive because it alters the range of permissible outcomes for juvenile offenders by removing the certainty of a life without parole sentence and allowing lesser sentences proportionate with a juvenile offender's culpability. *See* Government's Response at 13, *In re Stone*, No. 13-1486 (2d Cir. May 30, 2013) ("*Miller* . . . categorically expands the range of permissible outcomes of the criminal proceeding. It is therefore a substantive rule.").

The *Miller* rule is also substantive because it removes a significant risk that juvenile offenders will face unlawful punishment. *See Summerlin*, 542 U.S. at 352. The *Miller* Court determined that, after invalidating mandatory life without parole sentences for juvenile offenders, "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." 132 S. Ct. at 2469. That is, the Court recognized that these sentences are unjust in a majority of cases. The *Miller* rule removes a significant risk of such an outcome.

Unlike procedural rules, the *Miller* rule does not "regulate *only* the manner of determining the defendant's culpability," *Summerlin*, 542 U.S. at 353 (emphases added and omitted). For example, in *Summerlin*, the Court concluded that a rule

-14-

was procedural because it simply allocated decision-making authority as between the judge and jury, by requiring juries instead of judges to find aggravating circumstances necessary for a death sentence. *Id.* By contrast, the *Miller* rule does not merely regulate the process by which a juvenile's culpability is determined. Rather, the rule prohibits a scheme that does not permit a meaningful determination of a juvenile's culpability. Exposure to increased imprisonment "is certainly a substantive liability" that "hardly resembles a procedural device." *Welch v. United States*, 604 F.3d 408, 414 (7th Cir. 2010).

### 5.    The *Miller* rule is otherwise retroactive as a watershed rule of criminal procedure.

Even if the *Miller* rule could be characterized as a rule that merely regulates procedure, it would apply retroactively as a "watershed rule of criminal procedure" that "implicat[es] the fundamental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 416, 419 (2007) (internal quotation marks omitted) (noting that *Gideon v. Wainwright*, 372 U.S. 335 (1963), would qualify as a watershed rule because "the risk of an unreliable verdict is intolerably high" when a defendant charged with a felony is denied representation). Watershed rules (1) address an "impermissibly large risk of injustice," *Summerlin*, 542 U.S. at 356 (internal quotation marks omitted), and (2) "alter our

-15-

understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Bockting*, 549 U.S. at 418.[5]

The *Miller* rule meets the first requirement because it prevents an impermissibly large risk of an unjust sentence. As the *Miller* Court determined, a mandatory life without parole sentencing scheme "poses too great a risk of disproportionate punishment" "[b]y making youth (and all that accompanies it) irrelevant to the imposition of the harshest prison sentence." 132 S. Ct. at 2469. Because "appropriate occasions for sentencing juveniles to this harshest penalty will be uncommon," *id.*, the *Miller* rule, as with the *Gideon* rule, prevents an "intolerably high" risk of injustice. *Bockting*, 549 U.S. at 419.

The *Miller* rule also meets the second requirement by altering our understanding of what it means to sentence juvenile offenders fairly. The *Miller* Court "effected a profound and sweeping change," *id.* at 421 (internal quotation marks omitted), by invalidating sentencing schemes in a majority of the states and at the federal level and requiring consideration of the hallmarks of youth before a life without parole sentence may be imposed. A meaningful culpability

---

[5] Watershed rules are not limited to those that bear on the outcome of a liability proceeding. *See Summerlin*, 542 U.S. at 355-56 (considering the watershed status of a post-liability, sentencing phase rule); *see also Lloyd v. United States*, 407 F.3d 608, 614 (3d Cir. 2005) ("*Summerlin* leaves little doubt that the 'watershed rule' exception can apply to a procedural rule that only affects sentencing . . . .").

determination where none existed before is "essential to the fairness of a proceeding." *Id.*

Because the *Miller* rule is retroactive on a *prima facie* basis, this Court should grant Mr. Williams's PFA Motion.

## B. Although Not Required At This Stage, Even A Cursory Glance At The Merits Of Mr. Williams's Claim Supports Granting PFA.

Congress limited the inquiry the Courts of Appeals undertake in evaluating PFA motions under Section 2255. The sole question at this stage is whether Mr. Williams has made a sufficient *prima facie* showing that *Miller* meets the elements of Section 2255(h)(2) so as to warrant a fuller exploration by the District Court. Engaging in a merits review at this stage would run counter to the plain text of AEDPA, standards of judicial economy, and principles of appellate jurisdiction. *See Ochoa v. Sirmons*, 485 F.3d 538, 545 (10th Cir. 2007) (rejecting "efforts to inject a merits-related element in the authorization inquiry"); *Case v. Hatch*, __ F.3d __, No. 11-2094, 2013 WL 1501521, at *11 n.4 (10th Cir. Apr. 12, 2013) ("[T]he phrase 'possible merit to warrant a fuller exploration by the district court' does *not* refer to the underlying constitutional claim . . . ."); *see also* Pet'r's *Graham* Br. 29-32. The District Court is the proper venue for a merits analysis.

In any event, if this Court decides to proceed with the next level of review, Mr. Williams's sentence is unconstitutional under *Miller* on a *prima facie* basis.

-17-

### 1. Mr. Williams received a mandatory life without parole sentence.

When Mr. Williams was sentenced in 1994, the Guidelines were "mandatory and binding on all judges." *United States v. Booker*, 543 U.S. 220, 233 (2005). The District Court applied an offense level of 43, for which the mandatory sentence was life in prison without parole. Supp. App. 69; USSG, § 5A (1992 ed.). At that time, the Guidelines did not permit the District Court to consider age as an appropriate mitigating factor. As the Supreme Court explained in *Booker*, the remote possibility of a downward departure based on a factor "not adequately taken into consideration" by the Sentencing Commission did not make the Guidelines any less mandatory in nature. 543 U.S. at 234 (quoting 18 U.S.C. § 3553(b)(1)). Indeed, in determining whether a factor was adequately taken into consideration, courts could consider "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b)(1). At the time, the Sentencing Commission had specifically rejected youth as an appropriate mitigating factor. USSG, § 5H1.1 (1992 ed.) ("Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."). Under this regime, courts

could only consider a defendant's age "in an extraordinary case." *United States v. Lopez*, 938 F.2d 1293, 1296 (D.C. Cir. 1991).[6]

Under *Miller*, this pre-*Booker* sentencing scheme "prevent[ed] the sentencer from considering youth and from assessing whether the law's harshest term of imprisonment proportionately punishe[d] a juvenile offender." 132 S. Ct. at 2458. Accordingly, Mr. Williams received a mandatory life without parole sentence.

## 2.    Mr. Williams was sentenced for juvenile conduct.

The *Miller* Court did not condition its decision on the age of the offender at the time of indictment or conviction. *Miller*'s categorical rule instead applies to *all* criminal acts that occur while the offender is under the age of eighteen. *See* 132 S. Ct. at 2460. The Supreme Court neither explicitly nor implicitly carved juvenile continuing crimes out of its holding. The *Miller* Court instead made clear that the hallmark features of youth render juveniles less culpable. A sentencing court therefore must be permitted to weigh such mitigating factors as chronological age, a failure to appreciate risks and consequences, environmental effects, and a

---

[6] At sentencing, the District Court rejected Mr. Williams's request for a "youthful lack of guidance" downward departure. Supp. App. 44-45. The Ninth Circuit first recognized such a departure in 1991. *United States v. Floyd*, 945 F.2d 1096, 1100 (9th Cir. 1991), *overruled on other grounds by United States v. Atkinson*, 990 F.2d 501 (9th Cir. 1993). The Sentencing Commission swiftly eliminated it the following year with a new policy statement, USSG, § 5H1.12 (1992 ed.), but without retroactive effect. *See United States v. Clark*, 8 F.3d 839, 844-45 (D.C. Cir. 1993). On direct appeal, this Court "recognize[d] the significant – arguably overwhelming – negative influences in [Mr. Williams's] childhood environment" such that a lack of guidance departure "would have been entirely legitimate." *United States v. Thomas*, 114 F.3d 228, 269 (D.C. Cir. 1997) (finding the District Court's rejection of such a departure was ultimately not clearly erroneous).

heighted capacity for rehabilitation. *See id.* at 2467-68. To the Court, the psychological makeup of juveniles makes mandatory life without parole sentences for juvenile conduct cruel and unusual and not justified by any penological goal.

Because this reasoning turns on the status of the offender at the time the wrongful conduct occurs, it applies equally to completed and continuing crimes. The applicability of *Miller* to continuing crimes is especially evident where the offense at issue is a drug conspiracy that spans the age of majority. The only overt conduct necessary to support liability for a drug conspiracy is the agreement to join. *See United States v. Thomas*, 114 F.3d 228, 262 (D.C. Cir. 1997). As this Court explained, "neither common law nor the drug conspiracy statute require proof of any overt act by a conspirator in furtherance of the conspiracy." *Id.* Because inactivity does not extinguish conspiracy liability, an individual may be found guilty of a drug conspiracy that he foolishly joined as a child even if he is not convicted of performing any overt acts in furtherance of that conspiracy as an adult. Yet, his conduct is no less the result of psychological underdevelopment.

In this context, even a cursory glance at the merits of Mr. Williams's claim evidences a sufficient *prima facie* showing that his mandatory life without parole sentence is invalid under *Miller*. Indeed, the Fourth Circuit reached a similar conclusion in considering nearly identical facts set forth in a recent PFA motion under *Graham v. Florida*, 130 S. Ct. 2011 (2010). *See In re Evans*, 449 F. App'x,

284, 284 (4th Cir. 2011) (granting PFA motion where petitioner was sentenced to life imprisonment without parole after being convicted of "six narcotics crimes committed as a juvenile and a criminal conspiracy that extended for some time after his eighteenth birthday").  In that case, the petitioner had been convicted "of seven of the ten counts against him, but acquitted on the only individual count which alleged post-eighteen conduct" and "each of the twenty overt acts alleged against [him] with regard to [a] charged drug conspiracy occurred before his eighteenth birthday, with the exception of the one act for which he was acquitted." Brief of Movant at 18, *In re Evans*, 449 F. App'x 284 (No. 11-194), 2011 WL 3645666.[7]

Here, the jury acquitted Mr. Williams of the seven substantive counts for which he was charged – each of which involved post-majority conduct.  And the only overt act that the Government was required to prove for the drug conspiracy count was that Mr. Williams joined the conspiracy – a onetime act committed at age fifteen.  *Thomas*, 114 F.3d at 262.  Likewise, of the three predicate acts underlying the RICO conspiracy conviction, only one regarded solely adult conduct, and it resulted in an acquittal when considered as a standalone charge.

---

[7]   Mr. Evans's Section 2255 petition remains pending before the United District Court for the Eastern District of Virginia, Case No. 2:92-CR-00163.

Where, as here, a continuing crime straddles the age of majority but the underlying adult conduct results in an acquittal as a standalone charge, there is a *prima facie* basis to find that Mr. Williams was unconstitutionally sentenced as a juvenile offender. *See In re Evans*, 449 F. App'x at 284. Mr. Williams thus plainly states at least a *prima facie* case that *Miller* renders his sentence unconstitutional and applies here, and this Court should thus grant this PFA Motion.

## CONCLUSION

For the reasons set forth above, this Court should grant this PFA Motion.


August 21, 2013                              Respectfully submitted,

                                             /s/ *Justin S. Antonipillai*
                                             Justin S. Antonipillai*
                                             Katharine C. Hinkle
                                             Colin A. B. Holmes
                                             ARNOLD & PORTER LLP
                                             555 Twelfth Street, N.W.
                                             Washington, D.C. 20004-1206
                                             Justin.Antonipillai@aporter.com
                                             (202) 942-5000

                                             *Counsel for Petitioner Andre Williams*
                                             *Appointed by this Court

-22-

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of

Appellate Procedure 32(a)(7)(B).  This brief contains 4,863 words as counted by

Microsoft Word 2007, excluding the parts of the brief exempted by Federal Rule of

Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32.  This brief has been

prepared in proportionally spaced typeface using Microsoft Word 2007 14-point

Times New Roman font.


/s/ *Colin A.B. Holmes*
Colin A. B. Holmes

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2013, I caused the foregoing *Supplemental Brief of Petitioner Andre Williams* to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit via the Court's appellate Case Management/Electronic Case Files (CM/ECF) system.  Participants in the case who were registered CM/ECF users were served by the CM/ECF system at that time.

Further, I hereby certify that I dispatched nine (9) paper copies to a third party commercial carrier for delivery to the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit.  In addition, two (2) paper copies will be served via Federal Express Priority Overnight on the following party:

**James M. Perez**
**United States Attorney's Office, District of Columbia**
**Criminal Division, Appellate Staff**
**555 Fourth Street, N.W., Room 8104**
**Washington, D.C. 20530**

/s/ *Colin A.B. Holmes*
Colin A. B. Holmes

## ADDENDUM A: Statutes & Regulations

18 U.S.C. § 3553

USSG, 5A (1992)

USSG, 5H1.1 (1992)

USSG, 5H1.12 (1992)

**Effective: May 27, 2010**

United States Code Annotated Currentness
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part II. Criminal Procedure
      🗎 Chapter 227. Sentences (Refs & Annos)
        🗎 Subchapter A. General Provisions (Refs & Annos)
        ➡➡ **§ 3553. Imposition of a sentence**

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

  **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

  **(2)** the need for the sentence imposed--

    **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)** to afford adequate deterrence to criminal conduct;

    **(C)** to protect the public from further crimes of the defendant; and

    **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  **(3)** the kinds of sentences available;

  **(4)** the kinds of sentence and the sentencing range established for--

    **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

      **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. [FN1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.--**

**(1) In general.**--Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**(2) Child crimes and sexual offenses.--**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(A)** [FN2] **Sentencing.**--In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless--

   **(i)** the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

   **(ii)** the court finds that there exists a mitigating circumstance of a kind or to a degree, that--

      **(I)** has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

      **(II)** has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

      **(III)** should result in a sentence different from that described; or

   **(iii)** the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c) Statement of reasons for imposing a sentence**.--The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--

   **(1)** is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

USCA Case #12-3037        Document #1452837        Filed: 08/21/2013        Page 39 of 105

**(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994(w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission,, [FN3] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence procedure for an order of notice.**--Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall--

**(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

**(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

**(3)** include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.

Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited authority to impose a sentence below a statutory minimum.**--Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**(f) Limitation on applicability of statutory minimums in certain cases.**--Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(1)** the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

**(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(3)** the offense did not result in death or serious bodily injury to any person;

**(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

**(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

CREDIT(S)

(Added Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1989; amended Pub.L. 99-570, Title I, § 1007(a), Oct. 27, 1986, 100 Stat. 3207-7; Pub.L. 99-646, §§ 8(a), 9(a), 80(a), 81(a), Nov. 10, 1986, 100 Stat. 3593, 3619; Pub.L. 100-182, §§ 3, 16(a), 17, Dec. 7, 1987, 101 Stat. 1266, 1269, 1270; Pub.L. 100-690, Title VII, § 7102, Nov. 18, 1988, 102 Stat. 4416; Pub.L. 103-322, Title VIII, § 80001(a), Title XXVIII, § 280001, Sept. 13, 1994, 108 Stat. 1985, 2095; Pub.L. 104-294, Title VI, § 601(b)(5), (6), (h), Oct. 11, 1996, 110 Stat. 3499, 3500; Pub.L. 107-273, Div. B, Title IV, § 4002(a)(8), Nov. 2, 2002, 116 Stat. 1807; Pub.L. 108-21, Title IV, § 401(a), (c), (j)(5), Apr. 30, 2003, 117 Stat. 667, 669, 673; Pub.L. 111-174, § 4, May 27, 2010, 124 Stat. 1216.)

[FN1] So in original. The period probably should be a semicolon.

[FN2] So in original. No subpar. (B) has been enacted.

[FN3] So in original. The second comma probably should not appear.

UNCONSTITUTIONALITY OF SUBSEC. (B)(1)

<Mandatory aspect of subsec. (b)(1) of this section held unconstitutional by United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).>

Current through P.L. 113-22 approved 7-25-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

# SENTENCING TABLE
**(in months of imprisonment)**

## Criminal History Category (Criminal History Points)

| Offense Level | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
|---|---|---|---|---|---|---|
| **Zone A** | | | | | | |
| 1 | 0 - 6 | 0 - 6 | 0 - 6 | 0 - 6 | 0 - 6 | 0 - 6 |
| 2 | 0 - 6 | 0 - 6 | 0 - 6 | 0 - 6 | 0 - 6 | 1 - 7 |
| 3 | 0 - 6 | 0 - 6 | 0 - 6 | 0 - 6 | 2 - 8 | 3 - 9 |
| 4 | 0 - 6 | 0 - 6 | 0 - 6 | 2 - 8 | 4 - 10 | 6 - 12 |
| 5 | 0 - 6 | 0 - 6 | 1 - 7 | 4 - 10 | 6 - 12 | 9 - 15 |
| 6 | 0 - 6 | 1 - 7 | 2 - 8 | 6 - 12 | 9 - 15 | 12 - 18 |
| 7 | 0 - 6 | 2 - 8 | 4 - 10 | 8 - 14 | 12 - 18 | 15 - 21 |
| 8 | 0 - 6 | 4 - 10 | 6 - 12 | 10 - 16 | 15 - 21 | 18 - 24 |
| 9 | 4 - 10 | 6 - 12 | 8 - 14 | 12 - 18 | 18 - 24 | 21 - 27 |
| **Zone B** | | | | | | |
| **Zone C** | | | | | | |
| 10 | 6 - 12 | 8 - 14 | 10 - 16 | 15 - 21 | 21 - 27 | 24 - 30 |
| 11 | 8 - 14 | 10 - 16 | 12 - 18 | 18 - 24 | 24 - 30 | 27 - 33 |
| 12 | 10 - 16 | 12 - 18 | 15 - 21 | 21 - 27 | 27 - 33 | 30 - 37 |
| 13 | 12 - 18 | 15 - 21 | 18 - 24 | 24 - 30 | 30 - 37 | 33 - 41 |
| 14 | 15 - 21 | 18 - 24 | 21 - 27 | 27 - 33 | 33 - 41 | 37 - 46 |
| 15 | 18 - 24 | 21 - 27 | 24 - 30 | 30 - 37 | 37 - 46 | 41 - 51 |
| 16 | 21 - 27 | 24 - 30 | 27 - 33 | 33 - 41 | 41 - 51 | 46 - 57 |
| 17 | 24 - 30 | 27 - 33 | 30 - 37 | 37 - 46 | 46 - 57 | 51 - 63 |
| 18 | 27 - 33 | 30 - 37 | 33 - 41 | 41 - 51 | 51 - 63 | 57 - 71 |
| 19 | 30 - 37 | 33 - 41 | 37 - 46 | 46 - 57 | 57 - 71 | 63 - 78 |
| 20 | 33 - 41 | 37 - 46 | 41 - 51 | 51 - 63 | 63 - 78 | 70 - 87 |
| 21 | 37 - 46 | 41 - 51 | 46 - 57 | 57 - 71 | 70 - 87 | 77 - 96 |
| 22 | 41 - 51 | 46 - 57 | 51 - 63 | 63 - 78 | 77 - 96 | 84 - 105 |
| 23 | 46 - 57 | 51 - 63 | 57 - 71 | 70 - 87 | 84 - 105 | 92 - 115 |
| 24 | 51 - 63 | 57 - 71 | 63 - 78 | 77 - 96 | 92 - 115 | 100 - 125 |
| **Zone D** | | | | | | |
| 25 | 57 - 71 | 63 - 78 | 70 - 87 | 84 - 105 | 100 - 125 | 110 - 137 |
| 26 | 63 - 78 | 70 - 87 | 78 - 97 | 92 - 115 | 110 - 137 | 120 - 150 |
| 27 | 70 - 87 | 78 - 97 | 87 - 108 | 100 - 125 | 120 - 150 | 130 - 162 |
| 28 | 78 - 97 | 87 - 108 | 97 - 121 | 110 - 137 | 130 - 162 | 140 - 175 |
| 29 | 87 - 108 | 97 - 121 | 108 - 135 | 121 - 151 | 140 - 175 | 151 - 188 |
| 30 | 97 - 121 | 108 - 135 | 121 - 151 | 135 - 168 | 151 - 188 | 168 - 210 |
| 31 | 108 - 135 | 121 - 151 | 135 - 168 | 151 - 188 | 168 - 210 | 188 - 235 |
| 32 | 121 - 151 | 135 - 168 | 151 - 188 | 168 - 210 | 188 - 235 | 210 - 262 |
| 33 | 135 - 168 | 151 - 188 | 168 - 210 | 188 - 235 | 210 - 262 | 235 - 293 |
| 34 | 151 - 188 | 168 - 210 | 188 - 235 | 210 - 262 | 235 - 293 | 262 - 327 |
| 35 | 168 - 210 | 188 - 235 | 210 - 262 | 235 - 293 | 262 - 327 | 292 - 365 |
| 36 | 188 - 235 | 210 - 262 | 235 - 293 | 262 - 327 | 292 - 365 | 324 - 405 |
| 37 | 210 - 262 | 235 - 293 | 262 - 327 | 292 - 365 | 324 - 405 | 360 - life |
| 38 | 235 - 293 | 262 - 327 | 292 - 365 | 324 - 405 | 360 - life | 360 - life |
| 39 | 262 - 327 | 292 - 365 | 324 - 405 | 360 - life | 360 - life | 360 - life |
| 40 | 292 - 365 | 324 - 405 | 360 - life | 360 - life | 360 - life | 360 - life |
| 41 | 324 - 405 | 360 - life | 360 - life | 360 - life | 360 - life | 360 - life |
| 42 | 360 - life | 360 - life | 360 - life | 360 - life | 360 - life | 360 - life |
| 43 | life | life | life | life | life | life |

November 1, 1992

## PART H - SPECIFIC OFFENDER CHARACTERISTICS

### *Introductory Commentary*

*The following policy statements address the relevance of certain offender characteristics to the determination of whether a sentence should be outside the applicable guideline range and, in certain cases, to the determination of a sentence within the applicable guideline range.  Under 28 U.S.C. § 994(d), the Commission is directed to consider whether certain specific offender characteristics "have any relevance to the nature, extent, place of service, or other incidents of an appropriate sentence" and to take them into account only to the extent they are determined  to be relevant by the Commission.*

*The Commission has determined that certain factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range.  Unless expressly stated, this does not mean that the Commission views such factors as necessarily inappropriate to the determination of the sentence within the applicable guideline range or to the determination of various other incidents of an appropriate sentence (e.g., the appropriate conditions of probation or supervised release).*

*In addition, 28 U.S.C. § 994(e) requires the Commission to assure that its guidelines and policy statements reflect the general inappropriateness of considering the defendant's education, vocational skills, employment record, family ties and responsibilities, and community ties in determining whether a term of imprisonment should be imposed or the length of a term of imprisonment.*

Historical Note:  Effective November 1, 1987.  Amended effective November 1, 1990 (see Appendix C, amendment 357); November 1, 1991 (see Appendix C, amendment 386).

**§5H1.1.    Age (Policy Statement)**

Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.  Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.  Physical condition, which may be related to age, is addressed at §5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse).

The guidelines are not applicable to a person sentenced as a juvenile delinquent under the provisions of 18 U.S.C. § 5037.

Historical Note:  Effective November 1, 1987.  Amended effective November 1, 1991 (see Appendix C, amendment 386).

**§5H1.2.    Education and Vocational Skills (Policy Statement)**

Education and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the  applicable guideline range, but the extent to which a defendant may have misused special training or education to facilitate criminal activity is an express guideline factor.  See §3B1.3 (Abuse of Position of Trust or Use of Special Skill).

### §5H1.10.   Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status (Policy Statement)

These factors are not relevant in the determination of a sentence.

Historical Note:  Effective November 1, 1987.

### §5H1.11.   Military, Civic, Charitable, or Public Service; Employment-Related Contributions; Record of Prior Good Works (Policy Statement)

Military, civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.

Historical Note:  Effective November 1, 1991 (see Appendix C, amendment 386).

### §5H1.12.   Lack of Guidance as a Youth and Similar Circumstances (Policy Statement)

Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range.

Historical Note:  Effective November 1, 1992 (see Appendix C, amendment 466).

## ADDENDUM B: Unpublished Cases & Briefs

Government's Response, *Johnson v. United States*, 720 F.3d 720
(8th Cir. Feb. 22, 2013)

Government's Response, *In re Stone*, No. 13-1486  (2d Cir. May 30, 2013)

Government's Response, *In re Wang*, No. 13-2426 (2d Cir. July 3, 2013)

*Alejandro v. United States*, No. 13-2450 (2d Cir. July 22, 2013)

*In re James*, No. 12-287 (4th Cir. May 10, 2013)

*In re Landry*, No. 13-247 (4th Cir. May 30, 2013)

*In re Stone*, No. 13-1486 (2d Cir. June 7, 2013)

*In re Wang*, No. 13-2426 (2d Cir. July 16, 2013)

*In re Wong*, No. 13-1670 (2d Cir. May 29, 2013)

No. 12-3744

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

KAMIL HAKEEM JOHNSON,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

**GOVERNMENT'S RESPONSE TO PETITIONER'S APPLICATION
FOR AUTHORIZATION TO FILE A SECOND OR SUCCESSIVE
MOTION UNDER 28 U.S.C. § 2255**

B. TODD JONES
  United States Attorney
  District of Minnesota

JEFFREY S. PAULSEN
  Assistant United States Attorney
  District of Minnesota
  600 U.S. Courthouse
  300 South Fourth Street
  Minneapolis, Minnesota 55415
  (612) 664-5600

Attorneys for Respondent

The United States of America, by and through its attorneys, B. Todd Jones, United States Attorney for the District of Minnesota, and Jeffrey S. Paulsen, Assistant United States Attorney, submits this memorandum in response to petitioner Kamil Hakeem Johnson's November 16, 2012, Motion Pursuant to Title 28 U.S.C. § 2244, Requesting Authorization To File a Second or Successive 28 U.S.C. § 2255 To The District Court ("Application").

Johnson, who was a juvenile at the time of his 1996 offense, seeks authorization to file a second motion under Section 2255 to challenge the constitutionality of his mandatory life-without-parole sentence.  In *Miller v. Alabama*, 132 S. Ct. 2455, 2460 (2012), the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  Although the Court had earlier held that a life-without-parole sentence for a non-homicide offense committed by a juvenile is always unconstitutional, see *Graham v. Florida*, 130 S. Ct. 2011 (2010), *Miller* did not bar such a sentence for a homicide committed before the age of 18.  132 S. Ct. at 2469. But under *Miller*, the sentencer for such a juvenile offense must have "discretion to impose a different punishment."  *Id*. at 2460.

Johnson's mandatory life sentence is therefore constitutionally flawed.  This Court may certify a second or successive Section 2255 motion where, as relevant here, the application makes a prima facie showing that it relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

Court," 28 U.S.C. § 2255(h)(2).  Because the United States agrees that Johnson's reliance on *Miller* makes such a prima facie showing, his motion should be granted and the case certified for filing in the district court.

## I.    Factual and Procedural Background

### A.    Offense Conduct

In 1996, Johnson, who was then 17 years old, was a member of the St. Paul, Minnesota, branch of the Rolling 60s Crips street gang.  On the evening of July 20, 1996, Johnson and two other members of the Rolling 60s Crips, Keith Crenshaw and Timothy McGruder, spotted members of a rival gang at a gas station.  All Rolling Crips had been ordered to shoot members of that gang on sight.  Johnson and the others ran to an alley next to the gas station and began firing.  Their fire was concentrated on a Cadillac parked about 30 feet in front of them, and a four-year-old child in the car was shot and killed.  Ballistic evidence suggested that Johnson fired the shot that killed the child.  *United States v. Crenshaw*, 359 F.3d 977, 981-983 (8th Cir. 2004); Gov't C.A. Br. (No. 02-4084) 1-4.

### B.    Conviction and Appeal

After a jury trial, Johnson and the two other shooters were each convicted of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1).  The district court sentenced Johnson to a mandatory term of life imprisonment.  *Crenshaw*, 359 F.3d at 981; see 18 U.S.C. § 1959(a)(1).

On appeal, Johnson argued that Section 1959 was not a valid exercise of Congress's power under the Commerce Clause, that the evidence at trial was insufficient to support his conviction, and that the verdict was against the weight of the evidence. This Court rejected those claims and affirmed Johnson's conviction and sentence. *Crenshaw*, 359 F.3d at 981, 983-997, 1005.

## C.    First Section 2255 Motion

On April 28, 2005, Johnson filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. He argued that 18 U.S.C. § 1959 was invalid because it was not published in the Federal Register or enacted into "positive law" and that his conviction was unlawful because the indictment failed to name the "United States Federal Corporation" as the prosecuting authority. The district court denied the Section 2255 motion, finding that Johnson's claims had "no support in law," and declined to issue a certificate of appealability (COA). Order, *Johnson v. United States*, No. 05-cv-848 (D. Minn. Aug. 3, 2005). This Court also denied Johnson's application for a COA. *Johnson v. United States*, No. 05-3995 (8th Cir. Jan. 25, 2006).

## D.    Application to File a Second Section 2255 Motion

On November 16, 2012, Johnson filed a pro se application in this Court for authorization to file a second or successive Section 2255 motion based on *Miller v.*

3

*Alabama*, 132 S. Ct. 2455 (2012). In *Miller*, the Supreme Court held that a sentencing scheme that mandates imposition of life imprisonment without possibility of parole for juvenile offenders violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 2469. Johnson argues that his claim satisfies the statutory requirements for filing a second or successive Section 2255 motion because *Miller* announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Application 1-2 (quoting 28 U.S.C. § 2255(h)(2)). He contends that *Miller* applies retroactively because it is a substantive rule that "removes a particular class of persons, specifically juveniles," from the reach of "statutes that impose mandatory life sentences for a homicide conviction without the possibility of parole." Application 4-5. He also argues that *Miller* should be applied retroactively because the Supreme Court granted relief to a second petitioner, Jackson, whose case arose on collateral review in the state system. Application 6-7; see *Miller*, 132 S. Ct. at 2461-2462, 2475. In addition, Johnson argues that *Miller* relied on prior decisions that have been applied retroactively on collateral review, see *id.* at 2463-2468, and that, like those decisions, *Miller* should be regarded as substantive and therefore retroactive. Application 7-8.

## II.   Legal Standards

Before a federal prisoner may file a second or successive motion under Section 2255, the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No.

4

104-132, 110 Stat. 1214, requires that he seek certification from a court of appeals panel that his motion satisfies one of the "gatekeeping" conditions in 28 U.S.C. § 2255(h).  A court of appeals should authorize a second or successive Section 2255 motion when the prisoner makes a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that his application satisfies one of the substantive grounds for a successive Section 2255 motion.  See 28 U.S.C. § 2255(h) (incorporating the standards from Section 2244 into Section 2255).  Courts of appeals have defined the "prima facie showing" required by the gatekeeping provision as "'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'"  *Reyes-Requena v. United States*, 243 F.3d 893, 898-899 (5th Cir. 2001) (quoting *Bennett v. United States*, 119 F.3d 468, 469-470 (7th Cir. 1997)).  "[I]f from the application and its supporting documents, 'it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition,'" the application should be granted.  *Id.* at 899; see also, *e.g.*, *In re Holladay*, 331 F.3d 1169, 1173-1174 (11th Cir. 2003); *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003); *Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002).

Section 2255(h)(2) permits a prisoner to apply for leave to file a second or successive Section 2255 motion based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).  The Supreme Court may make a new

5

constitutional rule retroactive to cases on collateral review by explicitly so stating in the decision announcing the new rule, or it may "make a rule retroactive over the course of two cases * * * with the right combination of holdings." *Tyler v. Cain*, 533 U.S. 656, 666 (2001) (construing materially identical language of 28 U.S.C. § 2244(b)(2)(A)); see *id.* at 668 (O'Connor, J., concurring) (same) (brackets in original); *id.* at 670-673 (Breyer, J., dissenting) (agreeing that if a decision holding that a particular type of rule applies retroactively to cases on collateral review is followed by a second decision holding that a given rule is of that particular type, then the given rule has necessarily been made retroactive to cases on collateral review).

## III.   The Application Makes a Prima Facie Showing that *Miller*'s Holding Has Been Made Retroactive to Cases on Collateral Review by the Supreme Court

*Miller*'s rule of constitutional law—that the Constitution forbids a mandatory life-without-parole sentence for a juvenile offender—is "new," in that no prior Supreme Court decisions dictated that holding.  Whether it has been "made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2255(h)(2), turns on the nature of *Miller*'s rule.  Under the retroactivity principles of *Teague v. Lane*, 489 U.S. 288 (1989), new *procedural* rules are not retroactive to cases on collateral review.  But new *substantive* rules, the Supreme Court has established, are retroactively applicable on collateral review.  *Bousley v. United States*, 523 U .S. 614, 620 (1998).  *Miller*'s holding that juvenile defendants cannot be subjected to a mandatory

6

life-without-parole sentence is properly regarded as a substantive rule. *Miller* does not simply alter sentencing procedures; rather, it expands the range of possible sentencing outcomes for a category of defendants by requiring that the sentencer have the option of imposing a lesser sentence. Because *Miller*'s rule should be treated as substantive and the Supreme Court has already established that substantive rules apply retroactively, Johnson has made at least a prima facie showing that the *Miller* rule has been "made retroactive to cases on collateral review by the Supreme Court," as required by Section 2255(h)(2). See *Tyler*, 533 U.S. at 666 (stating that a decision holding that a new rule constituted structural error, and a decision holding that all structural errors were retroactive under *Teague*, would combine to render the new rule one that has been "made retroactive" by the Supreme Court).

### A.    *Miller* Announced a New Rule

Johnson correctly argues that *Miller* announced a "new" rule under *Teague*. See Application 2, 4 (discussing the "New Rule announced in Miller"). A rule is "new" if it was not "*dictated* by precedent existing at the time the defendant's conviction became final." *Chaidez v. United States*, No. 11-820 (Feb. 20, 2013), slip op. 4 (quoting *Teague*, 489 U.S. at 301); *Graham v. Collins*, 506 U.S. 461, 467 (1993).

*Miller*'s holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," 132 S. Ct.

7

at 2469, was not "dictated" by existing precedent, *Graham v. Collins*, 506 U.S. at 467.

The *Miller* Court reached its holding by extending and combining "two strands of

precedent."  132 S. Ct. at 2463.  As *Miller* explained, the first line of precedent

"adopted categorical bans" on sentences that were excessively severe for a class of

offenders.  *Ibid.*; see, *e.g.*, *Kennedy v. Louisiana*, 554 U.S. 407 (2008); *Atkins v.

Virginia*, 536 U.S. 304 (2002).  Two such cases, the Court noted, involved juvenile

offenders.  *Roper v. Simmons*, 543 U.S. 551 (2005) (categorical ban on capital

punishment); *Graham v. Florida*, 130 S. Ct. 2011 (2010) (*Graham*) (categorical ban

on life-without-parole sentence for a non-homicide offense).  The *Graham* Court had

limited its holding to non-homicide offenses, reasoning that offenders who were both

juvenile and who lacked intent to kill had "twice diminished moral culpability," *id.*

at 2027.  Observing that *Graham* had compared a juvenile life-without-parole

sentence to the death penalty, however, *Miller* turned to a second line of precedent:

decisions "prohibit[ing] mandatory imposition of capital punishment" without

consideration of the characteristics of the defendant and his offense.  *Miller*, 132 S.

Ct. at 2463-2464 (citing *Woodson v. North Carolina*, 428 U.S. 280 (1976) (plurality

opinion)).  The *Woodson* line of decisions rested on the premise that "death is a

punishment different from all other sanctions in kind rather than degree," and,

therefore, "in capital cases the fundamental respect for humanity underlying the

Eighth Amendment requires consideration of the character and record of the

8

individual offender and the circumstances of the particular offense." 428 U.S. at 303-304.

*Miller* extended the first line of precedent—the *Roper-Graham* line of decisions—to conclude that juveniles are "constitutionally different" for sentencing purposes, even when, unlike in *Graham*, they commit homicide. 132 S. Ct. at 2464 (stating that *Graham*'s reasoning "implicates" all life-without-parole sentences imposed on juveniles, even though *Graham* "relate[d] only to non-homicide offenses"). *Miller* then extended the second line of precedent—the *Woodson* line of decisions—beyond its death-penalty context to hold that juveniles may not be subject to mandatory life-without-parole sentences, and the sentencer must consider the characteristics of juvenile defendants before imposing such a sentence. *Id*. at 2467. Rather than being dictated by precedent, then, *Miller*'s holding rested on the Supreme Court's extension of existing decisions beyond the limits expressed in those decisions. *Id*. at 2464 (noting that "confluence" of lines of precedent "leads to" the Court's conclusion, not that the conclusion was dictated by prior decisions). Because reasonable jurists considering petitioner's conviction at the time it became final could have concluded that then-existing precedent, including *Woodson,* did not establish the unconstitutionality of mandatory life-without-parole sentences for juveniles who committed homicide, *Miller* announced a new rule that was not dictated by precedent.

9

See *O'Dell*, 521 U.S. at 156.  Indeed, that conclusion is particularly clear for Johnson, whose conviction became final in 2004—before either *Roper* or *Graham* was decided.

### B.    The New Rule Announced in *Miller* Is Substantive

Under *Teague*, new rules of criminal *procedure* do not apply retroactively on collateral review of already-final convictions, unless they constitute "watershed rules of criminal procedure."  *Teague*, 489 U.S. at 311.  The Supreme Court has held, however, that *substantive* rules are not subject to *Teague* at all, and they necessarily apply retroactively on collateral review.  See *Beard v. Banks*, 542 U.S. 406, 411 n.3 (2004) ("Rules that fall within what we have referred to as *Teague*'s first exception 'are more accurately characterized as substantive rules not subject to [*Teague*'s] bar.'").  As the Court has explained, "*Teague* by its terms applies only to procedural rules."  *Bousley*, 523 U.S. at 620.  Because the rule announced in *Miller* is not solely about procedure, but alters the range of sentencing options for a juvenile homicide defendant, it is properly regarded as "substantive" for *Teague* purposes and applies retroactively to petitioner's conviction.

1.  The divide between substantive and procedural rules, as it has evolved in the Supreme Court's decisions, reflects the fundamental difference between the way a case is adjudicated (procedure) and the possible outcomes of the case (substance).  Originally, *Teague* borrowed from Justice Harlan's formulation to describe "substantive rules," which should be applied retroactively, as those that placed certain

10

primary conduct beyond the reach of the criminal law. 489 U.S. at 307 (citing *Mackey v. United States*, 401 U.S. 667, 692 (1971) (Harlan, J., concurring)). The Court subsequently expanded the category to include decisions categorically precluding a particular type of punishment or protecting a particular class of persons from such punishment. *Penry v. Lynaugh,* 492 U.S. 302, 329-330 (1989) ("[A] new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all."). The Court thus summarized that *Teague*'s bar on retroactive application does not extend to "a substantive categorical guarante[e] accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Saffle v. Parks*, 494 U.S. 484, 494 (1990) (citation and internal quotation marks omitted; brackets in original). The Court again expanded the class of substantive rules in *Bousley*, 523 U.S. at 620-621, holding that *Teague* does not apply to changes in the substantive scope of a criminal statute that have the effect of placing certain conduct outside of the reach of the law. Thus, "[n]ew *substantive* rules * * * include[] decisions that narrow the scope of a criminal statute by interpreting its terms," as well as decisions "that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro v. Summerlin*, 542 U.S. 348, 351-352 (2004).

Under this analysis, substantive rules affect the range of permissible outcomes of the criminal process, and procedural rules govern the *manner* of determining those outcomes. To date, the new rules the Court has treated as substantive have categorically prohibited a particular outcome for a particular class of defendants, regardless of the procedure employed. See *Summerlin,* 542 U.S. at 352 (citing *Bousley*, *supra*; *Saffle*, *supra*). But the category of substantive rules "includes" such rules, 542 U.S. at 351; it is not limited to them. See also *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008) (*Teague* is grounded in the authority of the courts "to adjust the scope of the writ in accordance with equitable and prudential considerations"). And the category of rules treated as "procedural," and thus not retroactive, has "regulate[d] only the *manner of determining* the defendant's culpability." *Summerlin*, 542 U.S. at 353; see, *e.g.*, *Hodge v. United States*, 602 F.3d 935, 937-938 (8th Cir.), cert denied, 131 S. Ct. 334 (2010); *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005). Such rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise," which, the Court stated, is a possibility too "speculative" to warrant retroactivity. *Summerlin,* 542 U.S. at 352. Taken together, the Court's descriptions of "substantive" and "procedural" rules under *Teague* produce the conclusion that rules that go beyond

12

regulating only the "manner" of determining culpability—and instead categorically change the range of outcomes—should be treated as substantive rules.

2. The *Miller* rule, which holds that a juvenile defendant may not be subject to mandatory life without parole, but instead must be given the opportunity to demonstrate that a lesser sentence is appropriate, 132 S. Ct. at 2469, categorically expands the range of permissible outcomes of the criminal proceeding. It is therefore a substantive rule.

*Miller* is not solely about the procedures that must be employed in considering the range of sentencing options. Rather, *Miller* changes the range of outcomes that a juvenile defendant faces for a homicide offense. A jurisdiction that mandates life without parole for juveniles convicted of homicide permits only one sentencing outcome. *Miller* invalidates such regimes and requires a range of outcomes that includes the possibility of a lesser sentence than life. That is a substantive change in the law, not solely a procedural one. The *Miller* rule does not "regulate only the *manner of determining* the defendant's culpability." *Summerlin,* 542 U.S. at 353. Instead, the *Miller* rule gives juvenile defendants the opportunity to obtain a different and more favorable outcome than was possible before *Miller*.

By contrast, the decisions that the Supreme Court has classified as procedural have altered only the process used to determine a defendant's culpability without expanding or narrowing the range of possible outcomes of the criminal process. In

13

*Summerlin*, for instance, the Court emphasized that its holding in *Ring v. Arizona*, 536 U.S. 584 (2002), that a sentencing judge may not make the aggravating findings that subject a defendant to the death penalty, did not "alter the range of conduct Arizona law subjected to the death penalty." *Summerlin*, 542 U.S. at 353. "Instead, *Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable by death." *Ibid.*; see also *Saffle*, 494 U.S. at 486, 495 (rule concerning the permissibility of instructing the jury not to rely on sympathy for the defendant was procedural; range of outcomes continued to include death or a less severe sentence); *Graham v. Collins*, 506 U.S. at 477 (rule concerning the manner in which a sentencing jury considered mitigating evidence was procedural; range of outcomes continued to include death or a less severe sentence). Unlike these decisions, *Miller* does not simply address the "manner of determining" a defendant's culpability; instead, it expands the range of outcomes of the criminal proceeding beyond that permitted by mandatory life-without-parole statutes. It requires that juvenile defendants must have the opportunity to establish that life without parole is not an appropriate sentence. It is therefore a substantive rule.

*Miller* does differ from previous decisions announcing substantive rules, all of which narrowed, rather than expanded, the range of permissible outcomes of the criminal process by prohibiting a particular outcome for a category of defendants. See, *e.g.*, *Graham*, 130 S. Ct. at 2031; *Roper*, 543 U.S. at 568-575. *Miller* does not

14

categorically hold that juvenile defendants may never be sentenced to life without parole for a homicide offense; instead, it requires the sentencer take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," before such a sentence may be imposed.  132 S. Ct. at 2469.    Thus, *Miller* stated that its holding "does not categorically bar a penalty for a class of offenders or type of crime," but instead "mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty."  *Id*. at 2471.  In that respect, *Miller* has a procedural component.

But nothing in *Miller* implies that the Court viewed its decision as purely procedural—and its holding makes clear that it is not.  By mandating that a juvenile defendant's characteristics must be taken into account at sentencing, the Court also mandated that new and more favorable potential outcomes be made available to defendants who previously had faced only one possible outcome—life without parole. *Miller*, 132 S. Ct. at 2469.  This is not akin to a procedural rule that simply requires admission of a class of evidence or changing the factfinder from judge to jury.  It requires that new sentencing options be available.  And the Court did not suggest that its alteration of the range of options available for a sentencer would have only the "speculative" effect on outcomes of most procedural rules.  *Summerlin,* 542 U.S. at 352.    Rather, the *Miller* Court stated that "we think appropriate occasions for

15

sentencing juveniles to this harshest possible penalty will be uncommon." 132 S. Ct. at 2469. Certainly, the government may still contend that a life-without-parole sentence should be imposed on a juvenile convicted of a homicide offense. But *Miller* categorically mandated that the sentencer be able to consider a lesser sentence as well.

In only one prior context has the Supreme Court invalidated a particular severe sentence as unconstitutional because of its mandatory character: the imposition of mandatory capital punishment. See *Woodson*, *supra*; *Roberts v. Louisiana*, 428 U.S. 325 (1976); *Sumner v. Shuman*, 483 U.S. 66 (1987). In conclusively ending mandatory death sentences, the Court refused to countenance "a departure from the individualized capital-sentencing doctrine" it had adopted, even for murder by life-term inmates. *Sumner*, 483 U.S. at 78. The Court never had the opportunity to consider whether the *Woodson* principle was retroactive under *Teague* because it amounted to a substantive rule. When the Court granted habeas relief in *Sumner*, only three individuals in the United States appear to have been under mandatory death sentences, *id.* at 72 n.2, and *Teague* lay 20 months in the future.[1] But it seems unlikely that non-retroactivity grounds would have been used to deny habeas relief for

---

[1]   Until *Miller*, no other case had extended *Woodson*. And in light of the Supreme Court's holdings in *Harmelin v. Michigan*, 501 U.S. 957 (1991) (rejecting Eighth Amendment challenge to mandatory life-without-parole sentence for possession of 650 grams or more of cocaine), and *Chapman v. United States*, 500 U.S. 453, 467 (1991) ("Congress has the power to define criminal punishments without giving the courts any sentencing discretion."), it seems highly unlikely that *Woodson* will be extended further.

16

a capital defendant who never had *any* opportunity to ask a sentencer to impose a lesser sentence.

Like *Miller*, *Woodson* has a procedural component.  See *Woodson*, 428 U.S. at 305 n.40 (plurality opinion) ("[T]he death sentences in this case were imposed under procedures that violated constitutional standards.").  But *Woodson*, like *Miller*, also does much more.  By requiring individualized consideration before imposing the harshest penalty available by law, each decision expanded the sentencing options that must be made available to the sentencer, *i.e.*, each case changed the substance of the sentencing decision by requiring that a less-harsh sentence be available.  And the execution of an individual who had no opportunity to seek a lesser sentence would completely violate the principle of "individualized sentencing" (*Sumner*, 483 U.S. at 75) that lay at the heart of *Woodson*.  *Miller* rests on the same principle of "individualized sentencing" as *Woodson*:    a court may not impose the "harshest possible penalty for juveniles" without the juvenile having an opportunity to ask for a lesser sentence.  *Miller*, 132 S. Ct. at 2460, 2464 n.4, 2466 n.6, 2475.  Just as *Woodson* changed the substance of capital sentencing, *Miller*'s fundamental change in the law should similarly be regarded as substantive under *Teague*.

## C.    Johnson Is Entitled to Certification Under Section 2255(h)(2)

Johnson has made a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that his application satisfies Section 2255(h)(2), because he has made "'a sufficient showing

17

of possible merit to warrant a fuller exploration by the district court.'" *Reyes-Requena*, 243 F.3d at 898-899.   Under Section 2255(h)(2), a second or successive motion may rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).  Johnson has a claim of "possible merit" that the Supreme Court has, through "a combination of holdings," made *Miller* retroactive to cases on collateral review.  See *Tyler*, 533 U.S. at 666.  And *Miller* was clearly "unavailable" to Johnson both when his sentence became final in 2004 and when he filed his first motion under Section 2255 in 2005.  He had no opportunity to argue that a 2012 Supreme Court decision established that his mandatory life sentence is constitutionally flawed.

The Supreme Court has held that substantive rules are retroactively applicable on collateral review.  See *Banks*, 542 U.S. at 411 n.3; *Bousley*, 523 U.S. at 620.  As discussed above, *Miller* should be regarded as a substantive rule for *Teague* purposes under the analysis in Supreme Court cases.  At the very least, the argument is substantial.  Although *Teague* itself does not apply to state courts, see *Danforth*, *supra*, one state appellate court has concluded that *Miller* is retroactively applicable as a substantive rule.  In *People v. Morfin*, 2012 WL 6028634, at *11 (Ill. App. Ct. Nov. 30, 2012), the Illinois intermediate appellate court, applying *Teague*'s framework, held that "*Miller* constitutes a new substantive rule" because it "mandates a sentencing range broader than that provided by statute for minors convicted of first

18

degree murder who could otherwise receive only natural life imprisonment." The *Morfin* court noted that Florida and Michigan appellate courts have concluded that *Miller* is procedural. See *id.* at *10-*11; *People v. Carp*, 2012 WL 5846553 (Mich. Ct. App. Nov. 15, 2012) (*Miller* is procedural under Michigan's application of *Teague* principles because it does not categorically bar life without parole); *Geter v. State*, 2012 WL 4448860 (Fla. Dist. Ct. App. Sept. 27, 2012) (*Miller* is procedural under state retroactivity law). But the argument that *Miller* is substantive remains of sufficient force at least to be worthy of further consideration by the district court.

Johnson also has a claim of "possible merit" that the Supreme Court has made *Miller* retroactive through a combination of holdings. *Banks* establishes that substantive rules are retroactive, and *Bousley* establishes that *Teague* is concerned only with rules of procedure. Johnson can therefore present a prima facie claim that the requirements of Section 2255(h)(2) are satisfied. Johnson should therefore be permitted to present his argument that *Miller* announced a substantive rule that applies retroactively to his conviction to the district court.[2]

---

[2] Johnson also argues that *Miller* should be applied retroactively even if it is a procedural rule, because the *Miller* Court granted relief to a second petitioner, Jackson, whose case arose on collateral review in the state system. Application 6-7; see *Miller*, 132 S. Ct. at 2461-2462, 2475. But *Teague* had no application to Jackson's case because it was on review from a state collateral proceeding. The Supreme Court has held that "the *Teague* decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under

19

# CONCLUSION

The application for authorization to file a second or successive Section 2255 motion should be granted.

Dated: February 22, 2013

Respectfully submitted,

B. TODD JONES
    United States Attorney
    District of Minnesota

s/Jeffrey S. Paulsen
JEFFREY S. PAULSEN
    Assistant United States Attorney
    District of Minnesota
    600 U.S. Courthouse
    300 South Fourth Street
    Minneapolis, Minnesota 55415
    (612) 664-5600

---

*Teague*." *Danforth*, 552 U.S. at 282. No federal *Teague* issue was before the Court in *Miller*. Furthermore, the *Teague* defense "is not 'jurisdictional.'" *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). When a State forfeits the *Teague* bar, the Court may announce a new rule even though the case might otherwise have presented *Teague* issues. The State in *Miller* did not raise *Teague* as a defense.

20

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2013, I served the foregoing

Government's Response to Petitioner's Application for Authorization to File a

Second or Successive Motion under 28 U.S.C. 2255 by first-class mail, postage

prepaid, on petitioner at the following address:

                            Kamil Hakeem Johnson
                            Fed. Reg. No. 10252-091
                            FCC Coleman USP-II
                            P.O. Box 1034
                            Coleman, Florida 33521


                             s/Jeffrey S. Paulsen
                            JEFFREY S. PAULSEN
                            Attorney for Respondent

22

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 13-1486

DWAYNE STONE,

Petitioner,

- against -

UNITED STATES OF AMERICA,

Respondent.

GOVERNMENT'S RESPONSE TO PETITIONER'S
MOTION FOR RECONSIDERATION OF ORDER DENYING
MOTION FOR LEAVE TO FILE A SECOND MOTION
PURSUANT TO 28 U.S.C. § 2255

LORETTA E. LYNCH,
United States Attorney,
Eastern District of New York.

PETER A. NORLING,
DAVID C. JAMES,
Assistant United States Attorneys,
        (Of Counsel).

<u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . 2

ARGUMENT –

      THE COURT SHOULD GRANT THE MOTION FOR RECONSIDERATION,
      VACATE THE MAY 13, 2013 ORDER, AND GRANT STONE
      LEAVE TO FILE A SECOND MOTION UNDER SECTION 2255. . . . . . 5

      I.    The Gatekeeping Requirements. . . . . . . . . . . . 5

      II.   The Application Makes a Prima Facie Showing
           that Miller's Holding Has Been Made Retroactive
           to Cases on Collateral Review by the Supreme Court. . 6

           A.    <u>Miller</u> Announced a New Rule. . . . . . . . . . 7

           B.    The New Rule Announced in <u>Miller</u>
               Is Substantive. . . . . . . . . . . . . . . . 10

      III. Stone Is Entitled to Certification
           Under Section 2255(h)(2). . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . 20

ii

TABLE OF AUTHORITIES

Page

CASES

Atkins v. Virginia,
 536 U.S. 304 (2002). . . . . . . . . . . . . . . . . . 8

Beard v. Banks,
 542 U.S. 406 (2004). . . . . . . . . . . . . . . 10, 19, 20

Bell v. United States,
 296 F.3d 127 (2d Cir. 2002). . . . . . . . . . . . . . 5

Bousley v. United States,
 523 U.S. 614 (1998). . . . . . . . . . . 7, 10, 11, 12, 19, 20

Chapman v. United States,
 500 U.S. 453 (1991). . . . . . . . . . . . . . . . . 17

Craig v. Cain,
 2013 WL 69128 (5th Cir. Jan. 4, 2013). . . . . . . . . . 18

Danforth v. Minnesota,
 552 U.S. 264 (2008). . . . . . . . . . . . . . . . 12, 19

Geter v. State,
 2012 WL 4448860 (Fla. Dist. Ct. App. Sept. 27, 2012). . . . 19

Graham v. Collins,
 506 U.S. 461 (1993). . . . . . . . . . . . . . . . 7, 14

Graham v. Florida,
 130 S. Ct. 2011 (2010). . . . . . . . . . . . . . 8, 9, 15

Harmelin v. Michigan,
 501 U.S. 957 (1991). . . . . . . . . . . . . . . . . 17

Kennedy v. Louisiana,
 554 U.S. 407 (2008). . . . . . . . . . . . . . . . . 8

Mackey v. United States,
 401 U.S. 667 (1971). . . . . . . . . . . . . . . . . 11

Miller v. Alabama,
 132 S. Ct. 2455 (2012). . . . . . . . . . . . . . . passim

iii

In re Morgan,
____ F.3d ____, 2013 WL 1499498 (4th Cir. April 12, 2013).. 18

O'Dell v. Netherland,
 521 U.S. 151 (1997). . . . . . . . . . . . . . . . . 10

Penry v. Lynaugh,
 492 U.S. 302 (1989). . . . . . . . . . . . . . . . . 11

People v. Carp,
 2012 WL 5846553 (Mich. Ct. App. Nov. 15, 2012). . . . . . 19

People v. Morfin,
 2012 WL 6028634 (Ill. App. Ct. Nov. 30, 2012). . . . . . . 19

Ring v. Arizona,
 536 U.S. 584 (2002). . . . . . . . . . . . . . . . . 14

Roberts v. Louisiana,
 428 U.S. 325 (1976). . . . . . . . . . . . . . . . . 16

Roper v. Simmons,
 543 U.S. 551 (2005). . . . . . . . . . . . . . . 8, 15

Saffle v. Parks,
 494 U.S. 484 (1990). . . . . . . . . . . . . . 11, 12, 14

Schriro v. Summerlin,
 542 U.S. 348 (2004). . . . . . . . . . . . 12, 13, 14, 16

Sumner v. Shuman,
 483 U.S. 66 (1987). . . . . . . . . . . . . . . . 16, 17

Teague v. Lane,
 489 U.S. 288 (1989). . . . . . . . . . . . . . . passim

Tyler v. Cain,
 533 U.S. 656 (2001). . . . . . . . . . . . . . . 6, 7, 18

Woodson v. North Carolina,
 428 U.S. 280 (1976). . . . . . . . . . 8, 9, 10, 16, 17, 18

STATUTES

28 U.S.C. § 2244(b)(3)(C). . . . . . . . . . . . . . . 5, 18

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . passim

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 13-1486

DWAYNE STONE,

Petitioner,

- against -

UNITED STATES OF AMERICA,

Respondent.

GOVERNMENT'S RESPONSE TO PETITIONER'S
MOTION FOR RECONSIDERATION OF ORDER DENYING
MOTION FOR LEAVE TO FILE A SECOND MOTION
PURSUANT TO 28 U.S.C. § 2255

PRELIMINARY STATEMENT

Petitioner Dwayne Stone seeks reconsideration of this
Court's order, entered May 13, 2013, denying his motion for leave
a file a second or successive motion for relief under 28 U.S.C.
§ 2255 in the United States District Court for the Eastern District
of New York.  Stone seeks to challenge, under Miller v. Alabama,
132 S. Ct. 2455 (2012), a judgment in the district court convicting
him, inter alia, of murder in aid of racketeering and conspiracy to
murder in aid of racketeering, in violation of 18 U.S.C.
§§ 1959(a)(1)&(5), and sentencing him to two mandatory life terms.
The Court denied his motion, in an order dated May 13, 2013,

2

holding that <u>Miller</u> does not constitute a new rule of constitutional law for the purposes of the exception to Section 2255's bar on second or successive petitions.

For the reasons set forth below, the court should grant the motion for reconsideration, vacate the May 13, 2013 order, and grant Stone leave to file a second motion under Section 2255.

<u>STATEMENT OF FACTS</u>

Stone was convicted, after a four-week jury trial in January 2008, of murder in aid of racketeering, racketeering and racketeering conspiracy, use of and carrying a firearm during and in relation to a drug trafficking crime and a crime of violence, conspiracy to distribute and possess with intent to distribute cocaine base and possession of stolen firearms. He was sentenced to a term of life imprisonment with multiple lesser terms.[1]

Stone and codefendant James McTier were leaders of a violent street gang, the Folk Nation, that operated in the Brownsville neighborhood of Brooklyn, New York from 1998 through 2003. The members of the gang sold crack cocaine and committed acts of violence, including murder, attempted murder and armed

---

[1]    The judgment inaccurately indicates that Stone was sentenced to a life term on two counts, Count 12, charging murder in aid of racketeering (18 U.S.C. § 1959(a)(1)), which carried the mandatory life term here at issue, and Count 11, charging conspiracy to commit murder in aid of racketeering (18 U.S.C. § 1959(a)(5)), which carries a maximum of 10 years' imprisonment. The sentencing transcript, however, indicates that a 10-year sentence was imposed on the latter count. (Sentencing Transcript at 9, 12).

3

robbery.

As relevant to the instant proceeding, Stone was convicted of murder in aid of racketeering (Count 12) and conspiracy to commit murder in aid of racketeering (Count 11), in connection with the October 6, 2000, murder of James Washington, a member of a rival gang, with whom the Folk Nation had been at war for months. Not only was Washington a rival gang member, but he also had been in an earlier dispute with Stone at a nearby nightclub. Stone and an accomplice, Baker, approached Washington, and Stone pulled out his gun and pointed it at Washington's face. When Washington dared Stone to just "go ahead with that" and started to turn away, Stone shot him in the face and several more times in the back as Washington stumbled back into the courtyard. Washington died of his wounds. Under 18 U.S.C. § 1959(a)(1), the murder offense was punishable "by death or life imprisonment," and Stone was sentenced to a life term of imprisonment. He was also sentenced to terms of 41 months to 300 months on the six remaining counts.

Stone, together with three codefendants, appealed. He claimed that Stone argues that the court improperly denied his motion for a new trial or a hearing based on purported jury misconduct, that the evidence was insufficient to support his convictions, and that his sentences under 18 U.S.C. § 924(c) were invalid under United States v. Whitley, 529 F.3d 150 (2d Cir.

2008), reh'g denied, 540 F.3d 87 (2d Cir. 2009). This Court affirmed in an unpublished order on December 1, 2009. United States v. Stone (McTier), No. 08-3064. A petition for certiorari was denied by order dated June 7, 2010.

On June 7, 2011, Stone filed a motion under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. This motion was denied in an August 24, 2011 memorandum and order. By order dated July 20, 2012, this Court denied a motion for a certificate of appealability.

By motion filed April 19, 2013, Stone sought leave to file to file a second motion under Section 2255 based upon Miller v. Alabama, 132 S. Ct. 2455 (2012). Miller held that the Eighth Amendment's Cruel and Unusual Punishments Clause precluded application of a mandatory life term of imprisonment without the availability of parole on defendants who committed their offenses when they were juveniles. As noted, this Court denied Stone's motion. For the reasons set forth below, the Court should grant the motion for reconsideration, vacate the May 13, 2013 order, and grant Stone leave to file a second motion under Section 2255.[2]

---

[2] We do not repeat Stone's procedural arguments with respect to the appropriateness of reconsideration (see Declaration in Support of Motion for Reconsideration at 3-5); we instead limit our argument to an explanation of our position that Stone's claim falls within Section 2255(h)(2)'s standards for entertaining second or successive motions.

5

<u>ARGUMENT</u>

THE COURT SHOULD GRANT THE MOTION FOR RECONSIDERATION,
VACATE THE MAY 13, 2013 ORDER, AND GRANT STONE
<u>LEAVE TO FILE A SECOND MOTION UNDER SECTION 2255</u>

I.    <u>The Gatekeeping Requirements</u>

Before a federal prisoner may file a second or successive

motion under Section 2255, the Antiterrorism and Effective Death

Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, requires

that he seek certification from a court of appeals panel that his

motion satisfies one of the "gatekeeping" conditions in 28 U.S.C.

§ 2255(h).    A court of appeals should authorize a second or

successive Section 2255 motion when the prisoner makes a "prima

facie showing," 28 U.S.C. § 2244(b)(3)(C), that his application

satisfies one of the substantive grounds for a successive Section

2255 motion.    <u>See</u> 28 U.S.C. § 2255(h) (incorporating the standards

from Section 2244 into Section 2255).    "A prima facie showing is

not a particularly high standard.    An application need only show

sufficient likelihood of satisfying the strict standards of § 2255

to 'warrant a fuller exploration by the district court.'"    <u>Bell v.</u>

<u>United States</u>, 296 F.3d 127, 128 (2d Cir. 2002) (per curiam)

(quoting <u>Bennett v. United States</u>, 119 F.3d 468, 469-70 (7th Cir.

1997)).

Section 2255(h)(2) permits a prisoner to apply for leave

to file a second or successive Section 2255 motion based on "a new

rule of constitutional law, made retroactive to cases on collateral

6

review by the Supreme Court, that was previously unavailable." 28
U.S.C. § 2255(h)(2). The Supreme Court may make a new
constitutional rule retroactive to cases on collateral review by
explicitly so stating in the decision announcing the new rule, or
it may "make a rule retroactive over the course of two cases . . .
with the right combination of holdings." <u>Tyler v. Cain</u>, 533 U.S.
656, 666 (2001) (construing materially identical language of 28
U.S.C. § 2244(b)(2)(A)); <u>see</u> <u>id.</u> at 668 (O'Connor, J., concurring)
(same) (brackets in original); <u>id.</u> at 670-73 (Breyer, J.,
dissenting) (agreeing that if a decision holding that a particular
type of rule applies retroactively to cases on collateral review is
followed by a second decision holding that a given rule is of that
particular type, then the given rule has necessarily been made
retroactive to cases on collateral review).

II. The Application Makes a Prima Facie Showing
     that <u>Miller's</u> Holding Has Been Made Retroactive
     <u>to Cases on Collateral Review by the Supreme Court</u>

<u>Miller's</u> rule of constitutional law -- that the
Constitution forbids a mandatory life-without-parole sentence for
a juvenile offender -- is "new," in that no prior Supreme Court
decisions dictated that holding. Whether it has been "made
retroactive to cases on collateral review by the Supreme Court," 28
U.S.C. § 2255(h)(2), turns on the nature of <u>Miller's</u> rule. Under
the retroactivity principles of <u>Teague v. Lane</u>, 489 U.S. 288
(1989), new *procedural* rules are not retroactive to cases on

7

collateral review.   But new *substantive* rules, the Supreme Court
has established, are retroactively applicable on collateral review.
See Bousley v. United States, 523 U.S. 614, 620 (1998).   Miller's
holding that juvenile defendants cannot be subjected to a mandatory
life-without-parole sentence is properly regarded as a substantive
rule.   Miller does not simply alter sentencing procedures; rather,
it expands the range of possible sentencing outcomes for a category
of defendants by requiring that the sentencer have the option of
imposing a lesser sentence.   Because Miller's rule should be
treated as substantive and the Supreme Court has already
established that substantive rules apply retroactively, Stone has
made at least a prima facie showing that the Miller rule has been
"made retroactive to cases on collateral review by the Supreme
Court," as required by Section 2255(h)(2).   See Tyler, 533 U.S. at
666 (stating that a decision holding that a new rule constituted
structural error, and a decision holding that all structural errors
were retroactive under Teague, would combine to render the new rule
one that has been "made retroactive" by the Supreme Court).

   A.   Miller Announced a New Rule

      Stone correctly argues that Miller announced a "new" rule
under Teague.   See Declaration In Support of Motion for
Reconsideration at 2.   A rule is "new" if it was not "dictated by
precedent existing at the time the defendant's conviction became
final."   Id. at 301; Graham v. Collins, 506 U.S. 461, 467 (1993).

8

Miller's holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," 132 S. Ct. at 2469, was not "dictated" by existing precedent. The Miller Court reached its holding by extending and combining "two strands of precedent." 132 S. Ct. at 2463. As Miller explained, the first line of precedent "adopted categorical bans" on sentences that were excessively severe for a class of offenders. Id.; see, e.g., Kennedy v. Louisiana, 554 U.S. 407 (2008); Atkins v. Virginia, 536 U.S. 304 (2002). Two such cases, the Court noted, involved juvenile offenders. Roper v. Simmons, 543 U.S. 551 (2005) (categorical ban on capital punishment); Graham v. Florida, 130 S. Ct. 2011 (2010) (categorical ban on life-without-parole sentence for a non-homicide offense). The Graham Court had limited its holding to non-homicide offenses, reasoning that offenders who were both juvenile and who lacked intent to kill had "twice diminished moral culpability." Id. at 2027. Observing that Graham had compared a juvenile life-without-parole sentence to the death penalty, however, Miller turned to a second line of precedent, decisions "prohibit[ing] mandatory imposition of capital punishment" without consideration of the characteristics of the defendant and his offense. Miller, 132 S. Ct. at 2463-64 (citing Woodson v. North Carolina, 428 U.S. 280 (1976) (plurality opinion)). The Woodson line of decisions rested on the premise that "death is a punishment different from

Case: 13-1486    Document: 19    Page: 13    05/30/2013    952196    24
USCA Case #12-3037    Document #1452837    Filed: 08/21/2013    Page 81 of 105

9

all other sanctions in kind rather than degree" and, therefore, "in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense."  428 U.S. at 303-04.

Miller extended the first line of precedent -- the Roper-Graham line of decisions -- to conclude that juveniles are "constitutionally different" for sentencing purposes, even when, unlike in Graham, they commit homicide.  132 S. Ct. at 2464 (stating that Graham's reasoning "implicates" all life-without-parole sentences imposed on juveniles, even though Graham "relate[d] only to non-homicide offenses").  Miller then extended the second line of precedent -- the Woodson line of decisions -- beyond its death-penalty context to hold that juveniles may not be subject to mandatory life-without-parole sentences and that the sentencer must consider the characteristics of juvenile defendants before imposing such a sentence.  Id. at 2467.  Rather than being dictated by precedent, then, Miller's holding rested on the Supreme Court's extension of existing decisions beyond the limits expressed in those decisions.  Id. at 2464 (noting that "confluence" of lines of precedent "leads to" the Court's conclusion, not that the conclusion was dictated by prior decisions).  Because reasonable jurists considering Stone's conviction at the time it became final could have concluded that then-existing precedent, including

Woodson, did not establish the unconstitutionality of mandatory life-without-parole sentences for juveniles who committed homicide, Miller announced a new rule that was not dictated by precedent. See O'Dell v. Netherland, 521 U.S. 151, 156 (1997).

    B.   The New Rule Announced in Miller Is Substantive

      Under Teague, new rules of criminal procedure do not apply retroactively on collateral review of already-final convictions, unless they constitute "watershed rules of criminal procedure." Teague, 489 U.S. at 311. The Supreme Court has held, however, that substantive rules are not subject to Teague at all and they necessarily apply retroactively on collateral review. See Beard v. Banks, 542 U.S. 406, 411 n.3 (2004) ("Rules that fall within what we have referred to as Teague's first exception 'are more accurately characterized as substantive rules not subject to [Teague's] bar.'"). As the Court has explained, "Teague by its terms applies only to procedural rules." Bousley, 523 U.S. at 620. Because the rule announced in Miller is not solely about procedure, but alters the range of sentencing options for a juvenile homicide defendant, it is properly regarded as "substantive" for Teague purposes and applies retroactively to Stone's conviction.

      1. The divide between substantive and procedural rules, as it has evolved in the Supreme Court's decisions, reflects the fundamental difference between the way a case is adjudicated (procedure) and the possible outcomes of the case (substance).

Originally, Teague borrowed from Justice Harlan's formulation to describe "substantive rules," which should be applied retroactively, as those that placed certain primary conduct beyond the reach of the criminal law.  489 U.S. at 307 (citing Mackey v. United States, 401 U.S. 667, 692 (1971) (Harlan, J., concurring)). The Court subsequently expanded the category to include decisions categorically precluding a particular type of punishment or protecting a particular class of persons from such punishment.  See Penry v. Lynaugh, 492 U.S. 302, 329-330 (1989) ("[A] new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all.").  The Court thus summarized that Teague's bar on retroactive application does not extend to "a substantive categorical guarante[e] accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." Saffle v. Parks, 494 U.S. 484, 494 (1990) (citation and internal quotation marks omitted; brackets in original).  The Court again expanded the class of substantive rules in Bousley, 523 U.S. at 620-21, holding that Teague does not apply to changes in the substantive scope of a criminal statute that have the effect of placing certain conduct outside of the reach of the law.  Thus, "[n]ew *substantive* rules . . . include[] decisions that narrow the scope of a criminal statute by interpreting its terms," as well as

decisions "that place particular conduct or persons covered by the statute beyond the State's power to punish." Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004).

Under this analysis, substantive rules affect the range of permissible outcomes of the criminal process and procedural rules govern the *manner* of determining those outcomes. To date, the new rules the Court has treated as substantive have categorically prohibited a particular outcome for a particular class of defendants, regardless of the procedure employed. See Summerlin, 542 U.S. at 352 (citing Bousley; Saffle). But the category of substantive rules "includes" such rules, 542 U.S. at 351; it is not limited to them. See also Danforth v. Minnesota, 552 U.S. 264, 278 (2008) (Teague is grounded in the authority of the courts "to adjust the scope of the writ in accordance with equitable and prudential considerations"). And the category of rules treated as "procedural," and thus not retroactive, has "regulate[d] only the *manner of determining* the defendant's culpability." Summerlin, 542 U.S. at 353. Such rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise," which, the Court stated, is a possibility too "speculative" to warrant retroactivity. Summerlin, 542 U.S. at 352. Taken together, the Court's descriptions of "substantive" and

"procedural" rules under <u>Teague</u> produce the conclusion that rules that go beyond regulating only the "manner" of determining culpability -- and instead categorically change the range of outcomes -- should be treated as substantive rules.

  2. The <u>Miller</u> rule, which holds that a juvenile defendant may not be subject to mandatory life without parole but instead must be given the opportunity to demonstrate that a lesser sentence is appropriate, <u>see</u> 132 S. Ct. at 2469, categorically expands the range of permissible outcomes of the criminal proceeding.  It is therefore a substantive rule.

  <u>Miller</u> is not solely about the procedures that must be employed in considering the range of sentencing options.  Rather, <u>Miller</u> changes the range of outcomes that a juvenile defendant faces for a homicide offense.  A jurisdiction that mandates life without parole for juveniles convicted of homicide permits only one sentencing outcome.  <u>Miller</u> invalidates such regimes and requires a range of outcomes that includes the possibility of a lesser sentence than life.  That is a substantive change in the law, not solely a procedural one.  The <u>Miller</u> rule does not "regulate only the *manner of determining* the defendant's culpability." <u>Summerlin</u>, 542 U.S. at 353.  Instead, the <u>Miller</u> rule gives juvenile defendants the opportunity to obtain a different and more favorable outcome than was possible before <u>Miller</u>.

Case: 13-1486    Document: 19    Page: 18    05/30/2013    952196    24
USCA Case #12-3037    Document #1452837    Filed: 08/21/2013    Page 86 of 105

14

By contrast, the decisions that the Supreme Court has classified as procedural have altered only the process used to determine a defendant's culpability without expanding or narrowing the range of possible outcomes of the criminal process.    In Summerlin, for instance, the Court emphasized that its holding in Ring v. Arizona, 536 U.S. 584 (2002), that a sentencing judge may not make the aggravating findings that subject a defendant to the death penalty, did not "alter the range of conduct Arizona law subjected to the death penalty."    Summerlin, 542 U.S. at 353. "Instead, Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable by death." Id.; see also Saffle, 494 U.S. at 486, 495 (rule concerning the permissibility of instructing the jury not to rely on sympathy for the defendant was procedural; range of outcomes continued to include death or a less severe sentence); Graham v. Collins, 506 U.S. at 477 (rule concerning the manner in which a sentencing jury considered mitigating evidence was procedural; range of outcomes continued to include death or a less severe sentence).    Unlike these decisions, Miller does not simply address the "manner of determining" a defendant's culpability; instead, it expands the range of outcomes of the criminal proceeding beyond that permitted by mandatory life-without-parole statutes.    It requires that juvenile defendants must have the opportunity to establish that

life without parole is not an appropriate sentence. It is
therefore a substantive rule.

Miller does differ from previous decisions announcing
substantive rules, all of which narrowed, rather than expanded, the
range of permissible outcomes of the criminal process by
prohibiting a particular outcome for a category of defendants.
See, e.g., Graham, 130 S. Ct. at 2031; Roper, 543 U.S. at 568-75.
Miller does not categorically hold that juvenile defendants may
never be sentenced to life without parole for a homicide offense;
instead, it requires the sentencer take into account "how children
are different, and how those differences counsel against
irrevocably sentencing them to a lifetime in prison," before such
a sentence may be imposed. 132 S. Ct. at 2469. Thus, Miller
stated that its holding "does not categorically bar a penalty for
a class of offenders or type of crime" but instead "mandates only
that a sentencer follow a certain process -- considering an
offender's youth and attendant characteristics -- before imposing
a particular penalty." Id. at 2471. In that respect, Miller does
have a procedural component.

Nothing, however, in Miller implies that the Court viewed
its decision as purely procedural, and its holding makes clear that
it is not. By mandating that a juvenile defendant's
characteristics must be taken into account at sentencing, the Court
also mandated that new and more favorable potential outcomes be

Case: 13-1486   Document: 19   Page: 20   05/30/2013   952196   24
USCA Case #12-3037   Document #1452837   Filed: 08/21/2013   Page 88 of 105

16

made available to defendants who previously had faced only one possible outcome: life without parole. See Miller, 132 S. Ct. at 2469. This is not akin to a procedural rule that simply requires admission of a class of evidence or changing the factfinder from judge to jury. It requires that new sentencing options be available. And the Court did not suggest that its alteration of the range of options available for a sentencer would have only the "speculative" effect on outcomes of most procedural rules. Summerlin, 542 U.S. at 352. Rather, the Court stated that "we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." 132 S. Ct. at 2469. Certainly, the government may still contend that a life-without-parole sentence should be imposed on a juvenile convicted of a homicide offense. But Miller categorically mandated that the sentencer be able to consider a lesser sentence as well.

In only one prior context has the Supreme Court invalidated a particular severe sentence as unconstitutional because of its mandatory character, the imposition of mandatory capital punishment. See Woodson; Roberts v. Louisiana, 428 U.S. 325 (1976); Sumner v. Shuman, 483 U.S. 66 (1987). In conclusively ending mandatory death sentences, the Court refused to countenance "a departure from the individualized capital-sentencing doctrine" it had adopted, even for murder by life-term inmates. Sumner, 483 U.S. at 78. The Court never had the opportunity to consider

17

whether the Woodson principle was retroactive under Teague because it amounted to a substantive rule.   When the Court granted habeas relief in Sumner, only three individuals in the United States appear to have been under mandatory death sentences, see id. at 72 n.2, and Teague lay 20 months in the future.[3]   But it seems unlikely that non-retroactivity grounds would have been used to deny habeas relief for a capital defendant who never had *any* opportunity to ask a sentencer to impose a lesser sentence.

Like Miller, Woodson has a procedural component.  See Woodson, 428 U.S. at 305 n.40 (plurality opinion) ("[T]he death sentences in this case were imposed under procedures that violated constitutional standards.").  But Woodson, like Miller, also does much more.  By requiring individualized consideration before imposing the harshest penalty available by law, each decision expanded the sentencing options that must be made available to the sentencer, i.e., each case changed the substance of the sentencing decision by requiring that a less-harsh sentence be available.  And the execution of an individual who had no opportunity to seek a lesser sentence would completely violate the principle of "individualized sentencing" (Sumner, 483 U.S. at 75) that lay at

---

[3]   Until Miller, no other case had extended Woodson.  And in light of the Supreme Court's holdings in Harmelin v. Michigan, 501 U.S. 957 (1991) (rejecting Eighth Amendment challenge to mandatory life-without-parole sentence for possession of 650 grams or more of cocaine), and Chapman v. United States, 500 U.S. 453, 467 (1991) ("Congress has the power to define criminal punishments without giving the courts any sentencing discretion."), it seems highly unlikely that Woodson will be extended further.

18

the heart of <u>Woodson</u>.  <u>Miller</u> rests on the same principle of "individualized sentencing" as <u>Woodson</u>: a court may not impose the "harshest possible penalty for juveniles" without the juvenile's having an opportunity to ask for a lesser sentence.  <u>Miller</u>, 132 S. Ct. at 2460, 2464 n.4, 2466 n.6, 2475.  Just as <u>Woodson</u> changed the substance of capital sentencing, <u>Miller's</u> fundamental change in the law should similarly be regarded as substantive under <u>Teague</u>.[4]

## III. Stone Is Entitled to Certification Under Section 2255(h)(2)

In his motion for reconsideration, Stone has made a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that his application satisfies Section 2255(h)(2), because he has made a sufficient showing of possible merit to warrant a fuller exploration by the district court.  Under Section 2255(h)(2), a second or successive motion may rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).  Stone has a claim of "possible merit" that the Supreme Court has, through "a combination of holdings," made Miller retroactive to cases on collateral review.  See <u>Tyler</u>, 533 U.S. at 666.  And <u>Miller</u> was clearly "unavailable" to Stone both when his sentence became final in 2010 and when he filed his first motion

_____

[4]  We note that two circuits have rejected the analysis set forth in this memorandum and held that <u>Miller</u> is not retroactive to cases on collateral review.  See <u>In re Morgan</u>, ____ F.3d. ____, 2013 WL 1499498 (4th Cir. April 12, 2013); <u>Craig v. Cain</u>, 2013 WL 69128 (5th Cir. Jan. 4, 2013).

Case: 13-1486    Document: 19    Page: 23    05/30/2013    952196    24
USCA Case #12-3037    Document #1452837    Filed: 08/21/2013    Page 91 of 105

19

under Section 2255 in 2011. He had no opportunity to argue that a 2012 Supreme Court decision established that his mandatory life sentence is constitutionally flawed.

The Supreme Court has held that substantive rules are retroactively applicable on collateral review. See Banks, 542 U.S. at 411 n.3; Bousley, 523 U.S. at 620. As discussed above, Miller should be regarded as a substantive rule for Teague purposes under the analysis in Supreme Court cases. At the very least, the argument is substantial. Although Teague itself does not apply to state courts, see Danforth, one state appellate court has concluded that Miller is retroactively applicable as a substantive rule. In People v. Morfin, 2012 WL 6028634, at *11 (Ill. App. Ct. Nov. 30, 2012), the Illinois intermediate appellate court, applying Teague's framework, held that "Miller constitutes a new substantive rule" because it "mandates a sentencing range broader than that provided by statute for minors convicted of first degree murder who could otherwise receive only natural life imprisonment." The Morfin court noted that Florida and Michigan appellate courts have concluded that Miller is procedural. See id. at *10-*11; People v. Carp, 2012 WL 5846553 (Mich. Ct. App. Nov. 15, 2012) (Miller is procedural under Michigan's application of Teague principles because it does not categorically bar life without parole); Geter v. State, 2012 WL 4448860 (Fla. Dist. Ct. App. Sept. 27, 2012) (Miller is procedural under state retroactivity law). But the

20

argument that <u>Miller</u> is substantive remains of sufficient force at least to be worthy of further consideration by the district court. Stone also has a claim of "possible merit" that the Supreme Court has made <u>Miller</u> retroactive through a combination of holdings. <u>Banks</u> establishes that substantive rules are retroactive, and <u>Bousley</u> establishes that <u>Teague</u> is concerned only with rules of procedure. Stone can therefore present a prima facie claim that the requirements of Section 2255(h)(2) are satisfied. Stone should therefore be permitted to present his argument that <u>Miller</u> announced a substantive rule that applies retroactively to his conviction to the district court.

CONCLUSION

For the foregoing reasons, the Court should grant the motion for reconsideration, vacate the May 13, 2013 order, and grant Stone leave to file a second motion under Section 2255.

Dated:    Brooklyn, New York
          May 30, 2013

                              Respectfully submitted,

                              LORETTA E. LYNCH,
                              <u>United States Attorney</u>,
                              <u>Eastern District of New York</u>.


                    By:    _____/s/_____
                           Peter A. Norling
                           Chief, Appeals Division

PETER A. NORLING,
DAVID C. JAMES,
<u>Assistant United States Attorneys</u>,
     (<u>Of Counsel</u>).



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

July 3, 2013

The Honorable Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
  for the Second Circuit
The Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

          Re:  Wang v. United States
               No. 13-2426

Dear Ms. Wolfe:

          The government submits this letter in connection with the
submission by Petitioner Joseph Wang in which he seeks leave to file
a second or successive motion under 28 U.S.C. § 2255 based upon <u>Miller
v. Alabama</u>, 132 S. Ct. 2455 (2012), which held unconstitutional
mandatory life sentences for juveniles.  Wang relies, inter alia,
on this Court's granting of leave to file a second or successive
motion in <u>Stone v. United States</u>, No. 13-1486, arguing that <u>Miller</u>
is retroactive to cases on collateral review.  In <u>Stone</u>, the
government agreed with Stone that he had made a prima facie showing
that he satisfied the successive petition filing requirements.

          Although <u>Stone</u> involved a statutorily-required life term
of imprisonment and here, instead, a mandatory Guidelines life term
is applicable, at least for purposes of leave to file a successive
petition, <u>Miller</u> applies retroactively to both under the law of this
Circuit.  <u>See</u>, <u>e.g.</u>, <u>United States v. Haynes</u>, 985 F.2d 65, 69 (2d
Cir. 1993) (youthful lack of guidance generally not ground for
departure under mandatory Guidelines).  Because we have nothing to
add to Wang's submission, we do not intend to file any response beyond
this letter, unless, of course, the Court so requests.

Thank you for your consideration of this matter.

Respectfully submitted,

Loretta E. Lynch,
United States Attorney

By:    _____/s/_____
Peter A. Norling,
Assistant U.S. Attorney

S.D.N.Y.-N.Y.C.
03-cv-8361
McMahon, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

———————————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of July, two thousand thirteen.

Present:

      Reena Raggi,
      Richard C. Wesley,
        *Circuit Judges.*[*]

———————————————————

Angel Alejandro,

      *Petitioner,*

    v.                          13-2450

United States of America,

      *Respondent.*

———————————————————

Petitioner, through counsel, requests an order authorizing the United States District Court for the Southern District of New York to consider a successive 28 U.S.C. § 2255 motion. Upon due consideration, it is hereby ORDERED that the motion is GRANTED to allow him to file a § 2255 motion raising his proposed claim based on <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012).

Since this Court has only determined that Petitioner has made a <u>prima facie</u> showing that he has satisfied the successive petition requirements, <u>see</u> 28 U.S.C. § 2244(b)(3)(C), the district court is directed to address, as a preliminary inquiry under § 2244(b)(4), whether the United States Supreme Court's decision in <u>Miller</u> announced a new rule of law made retroactive to cases on collateral

———————————

[*] The Honorable Debra Ann Livingston recused herself from consideration of this motion. Pursuant to Second Circuit Internal Operating Procedure E(b), the matter is being decided by the two remaining members of the panel.

CERTIFIED COPY ISSUED ON 07/22/2013

review. See Quezada v. Smith, 624 F.3d 514, 521–22 (2d Cir. 2010); Bell v. United States, 296 F.3d 127, 128 (2d Cir. 2002) ("[T]he prima facie standard [applies to] our consideration of successive habeas applications under § 2255 and . . . the same standard applies to both state and federal successive habeas applications.").

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

FILED:  May 10, 2013

## UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

———————————

No. 12-287

———————————

In re: TERRANCE LAMOUNT JAMES, a/k/a T. L. James-Bey, a/k/a Terrance L. James-Bey, Sovereign

Movant

———————————

O R D E R

———————————

Movant has filed a motion under 28 U.S.C. § 2244 for an order authorizing the district court to consider a second or successive application for relief under 28 U.S.C. § 2254.

Counsel was appointed counsel for formal briefing and argument of the motion, and the case was scheduled for argument on May 14, 2013.  The case is now removed from the argument calendar for submission on the briefs.

The court grants authorization for the movant to file a second or successive habeas petition, thus permitting consideration of the petition by the district court in the first instance.

Entered at the direction of Judge King with the concurrence of Judge Shedd and Judge Thacker.

For the Court

/s/ Patricia S. Connor, Clerk

FILED: May 30, 2013

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 13-247**

─────────────

In re: HOLLY LANDRY,


            Movant.

─────────────

O R D E R

─────────────

        Movant has filed a motion under 28 U.S.C. § 2244 for

an order authorizing the district court to consider a second or

successive application for relief under 28 U.S.C. § 2254.  The

court grants authorization for the movant to file a second or

successive habeas petition, thus permitting consideration of the

petition by the district court in the first instance.

        Entered   at   the   direction   of   the   panel:   Judge

Wilkinson, Judge Motz, and Senior Judge Hamilton.

                            For the Court


                            /s/ Patricia S. Connor, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

———————

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of June, two thousand and thirteen.

Before:        Denny Chin,
                 Raymond J. Lohier, Jr.,
                        *Circuit Judges*,
                 Laura Taylor Swain,*
                        *District Judge*.

———————————————————————————

Dwayne Stone,

     Petitioner,

                                 **ORDER**
       v.                      Docket No. 13-1486

United States of America,

     Respondent.

———————————————————————————

Petitioner, through counsel, has filed a motion for reconsideration of this Court's order dated May 13, 2013 denying his request for an order authorizing the United States District Court for the Eastern District of New York to consider a successive 28 U.S.C. § 2255 motion.  Upon due consideration, it is hereby ORDERED that the motion for reconsideration is DENIED, as such motions are barred pursuant to 28 U.S.C. § 2244(b)(3)(E) ("The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.").

However, because this Court has determined *sua sponte* to reopen this proceeding, it is hereby ORDERED that the Court's order of May 13, 2013 is VACATED, and Petitioner's motion seeking authorization to file a successive § 2255 motion is GRANTED to allow him to file a § 2255 motion raising his proposed claim based on *Miller v. Alabama*, 132 S. Ct. 2455 (2012). *See Triestman v. United States*, 124 F.3d 361, 367 (2d Cir. 1997) ("under the AEDPA, a court of appeals retains the authority to order a rehearing *sua sponte*").  Since this Court has only determined that Petitioner has made a prima facie showing that he has satisfied the successive

———————————

*Judge Laura Taylor Swain, of the United States District Court for the Southern District of New York, sitting by designation.

petition requirements, see 28 U.S.C. § 2244(b)(3)(C), the district court is directed to address whether the United States Supreme Court's decision in *Miller* announced a new rule of law made retroactive to cases on collateral review. *See Quezada v. Smith*, 624 F.3d 514, 521-22 (2d Cir. 2010); *Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002) ("the prima facie standard [applies to] our consideration of successive habeas applications under § 2255 and . . . the same standard applies to both state and federal successive habeas applications").


For the Court:

Catherine O'Hagan Wolfe,
Clerk of Court



A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

E.D.N.Y.- Bklyn
96-cv-1453
13-cv-3522
Gershon, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

————————————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of July, two thousand thirteen.

Present:

      Jose A. Cabranes,
      Richard C. Wesley,*
        *Circuit Judges.*

————————————————————————

Joseph Wang,

      *Petitioner*,

     v.                              13-2426

United States of America,

      *Respondent*,

Juvenile Law Center,

      *Amicus Curiae.*

————————————————————————

Petitioner, *pro se*, requests an order authorizing the United States District Court for the Eastern District of New York to consider a successive 28 U.S.C. § 2255 motion. Upon due consideration, it is hereby ORDERED that the motion is GRANTED to allow him to file a § 2255 motion raising his proposed claim based on *Miller v. Alabama,* 132 S. Ct. 2455 (2012). *See Stone v. United States,* U.S.C.A. Dkt. 13-1486 at doc. 25 (order finding that petitioner had made a *prima facie* showing that

————————————————————

     * The Honorable Reena Raggi recused herself from consideration of this motion. Pursuant to Second Circuit Internal Operating Procedure E(b), the matter is being decided by the two remaining members of the panel.

SAO-MLM

*Miller* set forth a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable), and doc. 19 (Government's response agreeing that *Miller* qualifies under § 2255(h)); *see also Hill v. Snyder,* 2013 WL 364198*,* at *2 n.2 (E.D. Mich. Jan. 30, 2013) (noting that the court would find *Miller* retroactive on collateral review). *But see In re Morgan*, 713 F.3d 1365, 1367-68 (11th Cir. 2013) (finding *Miller* not retroactive on collateral review); *Craig v. Cain*, 2013 WL 69128, at *2 (5th Cir. Jan. 4, 2013) (same).

Since this Court has only determined that Petitioner has made a *prima facie* showing that he has satisfied the successive petition requirements, *see* 28 U.S.C. § 2244(b)(3)(C), the district court is directed to address, as a preliminary inquiry under § 2244(b)(4), whether the United States Supreme Court's decision in *Miller* announced a new rule of law made retroactive to cases on collateral review, and thus permits Petitioner's new § 2255 claim to proceed. *See Quezada v. Smith*, 624 F.3d 514, 521-22 (2d Cir. 2010); *Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002) ("the *prima facie* standard [applies to] our consideration of successive habeas applications under § 2255 . . . ."). Finally, it is further ORDERED that Respondent's motion for an extension of time to file its response in this proceeding is DENIED as moot given the response filed by Respondent on July 3, 2013.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

SAO-MLM

E.D.N.Y.-Bklyn
12-cv-5749
Dearie, J.

E.D.N.Y.-Bklyn
90-cr-1019
Dearie, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT
_____

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand thirteen.

Present:

Ralph K. Winter,
Peter W. Hall,
Gerard E. Lynch,
            *Circuit Judges.*

_____

Alex Wong,

            *Petitioner,*

            v.                                                            13-1670

United States of America,

            *Respondent.*

_____

Petitioner, through counsel, requests appointment of counsel and an order authorizing the United States District Court for the Eastern District of New York to consider a successive 28 U.S.C. § 2255 motion. Additionally, Petitioner moves for leave to file under seal certain sentencing submissions.

Upon due consideration, it is hereby ORDERED that the motion for leave to file a successive § 2255 motion is DENIED because Petitioner has not satisfied the criteria set forth in 28 U.S.C. § 2255(h). To the extent that Petitioner's claims were presented in his prior § 2255 motion, they must be dismissed pursuant to 28 U.S.C. § 2244(b)(1). To the extent that Petitioner's claims are deemed "new" for purposes of § 2244(b)(1) and § 2255(h), he has not shown that *Miller v. Alabama*, 132 S. Ct. 2455 (2012), announced a new rule of constitutional law made retroactive by the Supreme

SAO-SSH

Court to cases on collateral review. *See In re Morgan*, Dkt. No. 13-11175, --- F.3d ----, 2013 WL 1499498 at *1-3 (11th Cir. Apr. 12, 2013) (finding, in denying a motion for leave to file a successive § 2255 motion, that the Supreme Court had not held *Miller* to be retroactively applicable to cases on collateral review); *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (concluding that "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive" and that "[t]he Supreme Court does not 'ma[k]e' a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts.").

It is further ORDERED that Petitioner's motion for leave to file under seal certain sentencing submissions is DENIED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

SAO-SSH

2