ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE

———————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

Nos. 12-3037, 13-3060

———————————————

IN RE: ANDRE WILLIAMS, Petitioner

———————————————

ON MOTIONS FOR AUTHORIZATION TO FILE A SECOND
OR SUCCESSIVE PETITION UNDER 28 U.S.C. § 2255

———————————————

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
SUZANNE GREALY CURT
* JAMES M. PEREZ, D.C. Bar #986382
Assistant United States Attorneys

* Counsel for Oral Argument
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

Cr. No. 91-0559-09 (TFH)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are petitioner, Andre Williams, and the United States. There are no intervenors or *amici*.

## Rulings Under Review

There are no rulings under review. Rather, Williams seeks authorization to file a successive habeas petition under 28 U.S.C. § 2255(h)(2) in the United States District Court for the District of Columbia to challenge, under the Supreme Court's recent decisions in *Graham v. Florida*, 130 S.Ct. 2011 (2010), and *Miller v. Alabama*, 132 S.Ct. 2455 (2012), his sentences of life without parole.

# Related Cases

*United v. Thomas*, 114 F.3d 228 (D.C. Cir. 1997)(direct appeal)

*United States v. Perkins*, 138 F.3d 421 (D.C. Cir. 1998)(appeal of District Court's denial of motion for new trial)

*United States v. Williams*, No. 99-3133, 2000 WL 621998 (D.C. Cir. Apr. 24, 2000)(order denying certificate of appealability)

*In re Williams*, No. 00-3135 (D.C. Cir. Feb. 26, 2001)(order granting request by Mr. Williams for dismissal of application for leave to file a second or successive § 2255 motion)

*In re Williams*, No. 00-3136 (D.C. Cir. Feb. 7, 2001)(order denying certificate of appealability)

*In re Williams,* No. 06-3008 (D.C. Cir. Apr. 19, 2006)(motion for authorization to file a second or successive § 2255 motion)

*In re Williams*, No. 08-3111 (D.C. Cir. Mar. 18, 2009)(motion for authorization to file a second or successive § 2255 motion)

*In re Williams*, No. 08-5214 (D.C. Cir. Dec. 1, 2009)(petition for writ of mandamus)

*United States v. Williams*, No. 09-3009 (D.C. Cir. Apr. 19, 2011)(request by Mr. Williams for dismissal of appeal of District Court's denial of motion for sentence reduction)

*In re Williams*, No. 10-5347 (D.C. Cir. Dec. 8, 2010)(petition for writ of mandamus)

*In re Williams*, No. 11-3069 (D.C. Cir. Aug. 5, 2011)(termination for case opened in error)

*In re Williams*, No. 11-5181 (D.C. Cir. Sept. 2, 2011)(petition for writ of mandamus)

*In re Williams*, No. 11-5345 (D.C. Cir. Feb. 13, 2012)(petition for writ of mandamus)

*In re Williams*, No. 12-3019 (D.C. Cir. Apr. 30, 2012)(motion for authorization to file second or successive § 2255 motion)

*In re Williams,* No. 12-3039 (D.C. Cir. Aug. 23, 2012)(motion for authorization to file second or successive § 2255 motion)

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF THE CASE............................................ 1

STATEMENT OF FACTS.............................................................. 5

    A.  The Motion Based on *Graham v. Florida* (Case No. 12-3037).....................................................................................8

    B.  The Motion Based on *Miller v. Alabama* (Case No. 13-3060)...................................................................................11

SUMMARY OF ARGUMENT.........................................................12

ARGUMENT ............................................................................13

    I.  WILLIAMS' *GRAHAM* PETITION IS UNTIMELY..................19

        A.  Williams' "Signature Block" and "Certificate of Service" Do Not Comply With The Prison Mailbox Rule ...................................................................20

        B.  Notwithstanding His "Affidavit In Support," Filed More Than a Year After He Purportedly Gave His Petition to Prison Authorities, Williams Did Not Diligently Follow-Up on His *Graham* Petition .................25

    II.  *Graham* Is Retroactive, But It Does Not Apply to Williams ...................................................................29

        A.  The Retroactivity of *Graham*............................................29

        B.  Williams' Proposed Successive § 2255 Motion Does Not "Rely On" *Graham* ......................................................30

    III. *Miller*'s Holding Is Retroactive, But It Does Not Apply To Williams ...................................................................37

        A.  The Retroactivity of *Miller* ................................................37

        B.  Williams Cites *Miller* Only To The Extent It Reaffirms *Graham* ............................................................38

CONCLUSION ........................................................................41

# TABLE OF AUTHORITIES*

*Alejandro v. United States*, No. 13-CIV-4364,
2013 WL 4574066 (S.D.N.Y August 22, 2013) ....................................37

*Allen v. Culliver*, 471 F.3d 1196 (11th Cir. 2006)...................................27

*Atkins v. Virginia*, 536 U.S. 304 (2002) ..................................................14

*Baker v. United States*, 670 F.3d 448 (3d Cir. 2012) .........................24-25

*Christmas v. Oklahoma*, 290 Fed. App'x 126 (10th Cir. 2008)...............26

*City of Waukesha v. E.P.A.*, 320 F.3d 228 (D.C. Cir. 2003) ...................27

*Craig v. Cain*, No. 12-30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013)....37

*Davis v. United States*, 329 F. Supp. 2d 560 (S.D.N.Y. 2004) ...........24-25

*Day* v. *McDonough*, 547 U.S. 198 (2006) ....................................18-19, 27

*DePierre v. United States*, 131 S. Ct. 2225 (2011) ...................................5

*Dodd v. United States*, 545 U.S. 353 (2005)............................................15

*Grady v. United States*, 269 F.3d 913 (9th Cir. 2001) ............................26

\* *Graham v. Florida*, 130 S. Ct. 2011 (2010)...................5, 8, 11, 30-33, 39

*Hare* v. *United States*, 688 F.3d 878 (7th Cir. 2012) ..............................16

*Houston v. Lack*, 487 U.S. 266 (1988) ....................................................20

\* *Huizar v. Carey*, 273 F.3d 1220 (9th Cir. 2001)....................................27

---

\* Authorities upon which we chiefly rely are marked with asterisks.

\* *In re Evans*, 449 Fed. App'x. 284 (4th Cir. 2011)........................10, 34-35

*In re Hearn*, 418 F.3d 444 (5th Cir. 2005) ..............................................14

*In re Hill*, 437 F.3d 1080 (11th Cir. 2006) ..............................................16

*In re Holladay*, 331 F.3d 1169 (5th Cir. 2003)...................................14-15

*In re Lewis*, 484 F.3d 793 (5th Cir. 2007) ..............................................15

*In re Maxy*, 674 F.3d 658 (7th Cir. 2012)...............................................16

*In re McDonald*, 514 F.3d 539 (6th Cir. 2008)...................................16-17

*In re Morgan*, 713 F.3d 1365 (11th Cir.), *reh'g denied*
    717 F.3d 1186 (11th Cir. June 10, 2013) .............................................37

*In re Moss*, 703 F.3d 1301 (11th Cir. 2013).....................................29, 36

*In re Smith*, 285 F.3d 6 (D.C. Cir. 2002)..........................................14, 36

*In re Sparks*, 657 F.3d 258 (5th Cir. 2011) ...........................10, 29-30, 36

*In re Stallings*, No. 11-13016-I (11th Cir. Jul. 21, 2011).......................36

*In re Williams*, 364 F.3d 235 (4th Cir. 2004) ........................................39

*In re Wilson*, 442 F.3d 872 (5th Cir. 2006)............................................15

*In re Zambrano*, 433 F.3d 886 (D.C. Cir. 2006) ....................................14

*Johnson v. United States*, 720 F.3d 720 (8th Cir. 2013)........................37

*Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ..................................................4

\* *Miller v. Alabama*, 132 S. Ct 2455 (2012)...............................5, 10, 12, 38

*Outlaw* v. *Sternes*, 233 F.3d 453 (7th Cir. 2000) ....................................16

*People v. Morfin*, No. 1-10-3568, 2012 WL 6028634
    (Ill. App. Ct. Nov. 30, 2012) ...............................................37

*Price v. Philpot*, 420 F.3d 1158 (10th Cir. 2005) ....................................21

*Ray v. Clements*, 700 F.3d 993 (7th Cir. 2012) ......................................27

*Roper v. Simmons*, 543 U.S. 551 (2005)...............................................31

*Smith v. United States*, 133 S. Ct. 714 (2013) .......................................34

*Stoot v. Cain*, 570 F.3d 669 (5th Cir. 2009) ....................................25, 27

*Thomas v. United States*, 522 U.S. 1033 (1997) .....................................3

*United States v. Booker*, 543 U.S. 220 (2005) .........................................4

*United States v. Ceballos-Martinez*, 387 F.3d 1140
    (10th Cir. 2004)...............................................................22-24

*United States v. Craig*, 368 F.3d 738 (7th Cir. 2004) ........................23-24

*United States v. McDade*, 699 F.3d 499 (D.C. Cir. 2012) .................28-29

*United States v. McNeill*, No. 12-6129, 2013 WL 1811904
    (4th Cir. May 1, 2013)..........................................................27

*United States v. Peterson*, 916 F. Supp. 2d 102 (D.D.C. 2013)..........24-25

*United States v. Smith*, 182 F.3d 733 (10th Cir. 1999) .........................23

\*   *United States v. Thomas*, 114 F.3d 228 (D.C. Cir. 1997)... 1, 3, 6-8, 34, 36

*Washington v. United States*, 243 F.3d 1299 (11th Cir. 2001) .........24, 25

\*   *Wood v. Milyard*, 132 S. Ct. 1826 (2012) .........................................18-19

# OTHER AUTHORITIES

28 U.S.C. § 1746 .................................................................. 22

28 U.S.C. § 2244(3)(D) .......................................................... 29

28 U.S.C. § 2244(b)(2)(A) ................................................. 14, 32

28 U.S.C. § 2244(b)(3)(C) ........................................................ 17

28 U.S.C. § 2244(b)(3)(D) ........................................................ 27

28 U.S.C. § 2244(b)(4) ............................................................ 16

28 U.S.C. § 2255(f)(3) ..................................................... 9, 11, 20, 39

28 U.S.C. § 2255(h) ...................................................... 13-14, 19

28 U.S.C. § 2255(h)(2) ................................................. 14, 32, 37-39

Fed. R. App. P. 4(c)(1) ........................................................... 23

Fed. R. App. P. 25(a)(2)(C) ...................................... 11, 12, 20, 22

# ISSUES PRESENTED

I.    Whether Williams' request for authorization to file a successive 28 U.S.C. § 2255 motion in the district court based on the Supreme Court's May 17, 2010, decision in *Graham v. Florida*, 130 S. Ct. 2011 (2010), was "filed" within one-year of the Supreme Court's issuance of *Graham*, as required by 28 U.S.C. § 2255(f)(3), where (1) Williams' motion was dated May 2, 2011, but filed on the Court's docket over a year later on May 31, 2012, and (2) Williams has not complied with the "prison mailbox" rule, under Fed. R. App. P. 25(a)(2)(C).

II.   Whether Williams' first proposed successive § 2255 motion seeking resentencing is controlled by *Graham*, where, although *Graham* is retroactive to matters on collateral review, it only held that, "for a juvenile offender who did not commit homicide[,] the Eighth Amendment forbids the sentence of life without parole," and did not apply its ruling to defendants who, like Williams, participated in RICO and drug conspiracies that extended beyond their 18th birthday.

III.  Whether Williams' second proposed successive § 2255 motion seeking resentencing is controlled by *Miller v. Alabama*, 132 S.Ct. 2455 (2012), where *Miller* is retroactive to matters on collateral review, but

the principle that Williams cites *Miller* for is not a "new rule . . . that was previously unavailable," a prerequisite for a successive habeas motion, and *Miller* did not hold that defendants who participate in RICO and drug conspiracies that extend beyond their 18th birthday cannot be sentenced to life-without-parole.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

Nos. 12-3037, 13-3060

————————————

IN RE: ANDRE WILLIAMS, Petitioner

————————————

ON MOTIONS FOR AUTHORIZATION TO FILE A SECOND
OR SUCCESSIVE PETITION UNDER 28 U.S.C. § 2255

————————————

BRIEF FOR APPELLEE

————————————

## COUNTERSTATEMENT OF THE CASE

On September 25, 1991, petitioner Andre Williams and 23 other

individuals were charged in a 115-count indictment with participating

in a large-scale conspiracy to distribute marijuana, PCP, and cocaine in

Northeast, Washington, D.C. *See United States v. Thomas*, 114 F.3d

228, 258 (D.C. Cir. 1997); JA 326–400.[1] The indictment charged

---

[1] "Br." refers to Williams' brief (12-3037). "Supp. Br." refers to Williams' supplemental brief (13-3060). "JA" refers to Williams' joint appendix. "SA" refers to his supplemental appendix. "GSA" refers to the government's Supplemental Appendix.

Williams with 10 counts related to his membership in the "R Street Crew" conspiracy (JA 328–95) as follows: Count 1 charged him with acting as a lieutenant in a Racketeer Influenced Corrupt Organization (RICO) from May 1983 through March 26, 1991 (JA 328–75); Count 2: conspiring to participate in a RICO from May 1983 through March 26, 1991 ("RICO conspiracy")(JA 375–77); Count 3: conspiring to distribute and possess with intent to distribute controlled substances from May 1983 through March 26, 1991 ("drug conspiracy")(JA 377–79); Count 13: possessing with intent to distribute PCP on August 13, 1987 (JA 384); Count 14: possessing with intent to distribute marijuana on August 13, 1987 (*id.*); Count 18: employing minors to distribute and possess with the intent to distribute PCP and marijuana from August 1987 through September 1989 (JA 384–85); Count 22: possessing with intent to distribute PCP on March 17, 1988 (JA 385); Count 23: possessing with intent to distribute marijuana on March 17, 1988 (JA 385–86). Count 24: possessing with intent to distribute PCP on March 24, 1988 (JA 386); and Count 25: possessing with intent to distribute marijuana on March 24, 1988 (*id.*).

On February 11, 1993, Williams was found guilty of Count 2 (RICO conspiracy) and Count 3 (drug conspiracy)(JA 401–404). On April 21, 1994, the district court sentenced Williams to concurrent terms of life-without-parole on each count. *See Thomas*, 114 F.3d at 237, 258; JA 407–08.

On June 3, 1997, this Court affirmed Williams' convictions and sentences of life-without-parole. *Thomas*, 114 F.3d at 235. The Supreme Court denied a writ of certiorari on December 15, 1997. *Thomas v. United States*, 522 U.S. 1033 (1997)(mem.). After the imposition of his sentence, Williams filed a motion, under 28 U.S.C. § 2255, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), in the district court challenging his convictions, which the district court denied (JA 277). Williams has also filed numerous petitions in this Court seeking authorization to file second or successive § 2255 motions in the district court. This Court has denied these petitions for authorization.[2]

---

[2] Specifically, on June 17, 1998, Williams filed in the district court a § 2255 motion claiming he received ineffective assistance of counsel at trial and on appeal (JA 277; GSA 4). On May 13, 1999, the Honorable Thomas F. Hogan denied Williams' motion in part, ordered supplemental pleadings on one issue, and ordered an evidentiary hearing on another issue (JA 288; GSA 1). After receiving supplemental

(continued . . . )

3

_____

(. . . continued)

pleadings and holding an evidentiary hearing, the district court denied
Williams' motion on August 17, 1999 (JA 288; GSA 9). On January 6,
2000, the district court declined to issue a Certificate of Appealability
(COA)(JA 292; GSA 16). On April 24, 2000, this Court also declined to
issue a COA (JA 295).

On July 21, 2000, Williams filed in the district court a Motion to
Set Aside Judgment Pursuant to Fed. R. Civ. P. 60(b)(5)(JA 296). By an
order filed on October 5, 2000, the district court construed the motion as
a second or successive motion under 28 U.S.C. § 2255, and transferred it
to this Court (JA 297). Williams then filed a request for COA in this
Court, which was denied (GSA 22)(*In Re: Andre Williams*, Order, No.
00-3136, Feb. 7, 2001). Williams also filed a petition for leave to file a
second or successive § 2255 motion, but later moved to dismiss the
petition (GSA 23)(*In Re: Andre Williams*, Order, No. 00-3135, Feb. 26,
2001).

On December 17, 2003, Williams filed a motion for reconsideration
under Rule 60(b)(JA 303). On November 20, 2008, the district court
construed the motion as a second or successive motion under 28 U.S.C.
§ 2255 and transferred it to this Court (JA 315; GSA 24). On March 18,
2009, this Court denied the petition for leave to file a second or
successive motion under 28 U.S.C. § 2255 (GSA 27).

On January 17, 2006, Williams filed a second petition for
authorization to file a second or successive § 2255 motion (GSA 30). He
sought to challenge his sentence on Sixth Amendment grounds under
*United States v. Booker*, 543 U.S. 220 (2005)(GSA 32). On April 19,
2006, this Court denied the petition, finding that the Supreme Court
had not made *Booker* retroactive (GSA 32)(*In Re: Andre Williams*,
Order, No. 06-3008, Apr. 19, 2006).

On March 30, 2012, Williams filed a third petition for
authorization to file a second or successive § 2255 motion, in which he
argued that the Supreme Court's recent decision in *Lafler v. Cooper*,
132 S. Ct. 1376 (2012), established a new rule retroactive to collateral
matters (GSA 33). This Court denied the petition on April 30, 2012,

(continued . . . )

4

As discussed *infra* pp. 8–12, Williams has now filed: (1) on May 31, 2012, a motion for authorization to file a second or successive § 2255 motion based on the Supreme Court's decision in *Graham v. Florida*, 130 S. Ct. 2011 (2010); and (2) on June 24, 2013, a motion for authorization to file a second or successive § 2255 motion based on the Supreme Court's decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

A panel of this Court consolidated these motions and referred them to a merits panel. Williams filed his brief on June 14, 2013, and his supplemental brief on August 21, 2013.

## STATEMENT OF FACTS

Williams was 15 years old in 1984 when he joined the R Street Crew's large-scale conspiracy to distribute drugs in Northeast,

---

(. . . continued)
holding that the Supreme Court had not made *Lafler* retroactive (GSA 52)(*In Re: Andre Williams*, Order, No. 12-3019, Apr. 30, 2012).

On June 13, 2012, Williams filed a fourth petition for authorization to file a second or successive § 2255 motion, in which he argued that *DePierre v. United States*, 131 S. Ct. 2225 (2011), established a new rule retroactive to collateral matters (GSA 53). On August 23, 2012, this Court denied the petition because the Supreme Court had not made *DePierre* retroactive (GSA 56)(*In Re: Andre Williams*, Order, No. 12-3039, Aug. 23, 2012).

5

Washington, D.C. *See United States v. Thomas*, 114 F.3d 228, 262 (D.C.

Cir. 1997). As this Court explained Williams' role:

> [Williams] was first arrested in 1984 for selling drugs in the
> Lincoln Road–R Street area. During 1985 and 1986, [he]
> continued to sell drugs, was involved in bringing drugs to the
> stash houses, and supplied drugs to runners. In 1988, [he]
> was involved in mixing marijuana and PCP, and continued
> to sell and manage runners.

*Id.* 236.

> Moreover,

> other evidence at trial demonstrated that Andre Williams
> participated in the conspiracy at a significant level, that he
> was involved in processing, packaging and distributing
> drugs, that he communicated with the leaders of the
> conspiracy and was aware of their activities, that he enjoyed
> the profits of the drug sales, that he sought to protect the
> Crew's territory, and that he played a managerial role when
> his brothers were out of town.

*Thomas*, 114 F.3d at 261. Williams "turned eighteen on May 15, 1987."

*Id.* 236. As the indictment specified, Williams remained a part of the

conspiracy until March 26, 1991 (JA 375–79). At that time, he was 21

years old, and only a month-and-a-half shy of his 22nd birthday.

On February 11, 1993, a jury convicted Williams of Count 2 (the

RICO conspiracy, which ran from May 1983 through March 26, 1991)

and Count 3 (the drug conspiracy, which ran from March 1983 through

6

May 26, 1991), and acquitted him of the remaining charges. *See Thomas*, 114 F.3d at 258; JA 401–405.

With respect to the RICO conspiracy, the jury found that Williams had committed four predicate acts: (1) Racketeering Act 1: conspiracy to distribute and possess with intent to distribute a controlled substance from May 1983 through March 26, 1991; (2) Racketeering Act 5: possession with intent to distribute PCP, marijuana and cocaine on November 4, 1984; (3) Racketeering Act 33: possession with intent to distribute PCP and marijuana on March 24, 1988; and (4) Racketeering Act 40: maintaining premises for the purpose of unlawfully manufacturing, storing, distributing and using PCP from the summer of 1988 until on or about June 1989. *See Thomas*, 114 F.3d at 249–50. This Court later vacated the jury's finding on Racketeering Act 40, *id.* 250,[3] but it rejected Williams' contention that Racketeering Act 33 should be

---

[3] In Williams' direct appeal, the government "conceded that the jury was not instructed on the elements of [Racketeering Act 40 (maintaining premises for the purpose of unlawfully manufacturing, storing, distributing and using PCP)], and that it cannot serve as a predicate act for the RICO conspiracy conviction." *Thomas*, 114 F.3d at 250. Accordingly, this Court vacated the jury's verdict with respect to Racketeering Act 40. *Id.*

vacated because the jury acquitted him of the same conduct in Count 24, *id.* 250–51.

On April 21, 1994, the district court sentenced Williams to concurrent terms of life without parole on each conspiracy count (JA 408). In calculating Williams' sentencing guidelines, the court "attribute[d] to [Williams] all of the drugs handled by the conspiracy during its duration from 1984 through 1990," *Thomas*, 114 F.3d at 258, which included a period well after Williams turned 18 years old in 1987. On appeal, when affirming Williams' sentence, this Court agreed that Williams' "[e]xtensive involvement of this kind over the life of the conspiracy support[ed] the sentencing court's conclusion that Andre Williams agreed to participate to the fullest extent in the R Street Crew conspiracy," and, therefore, "the drug dealing conduct of his co-conspirators" was properly attributed to him. *Id.* 261.

## A.   The Motion Based on *Graham v. Florida* (Case No. 12-3037)

On May 31, 2012, Williams filed in this Court a *pro se* motion for authorization to file a second or successive § 2255 motion (JA 416). In the motion, Williams argued that the Supreme Court's May 17, 2010, decision in *Graham v. Florida*, 130 S. Ct. 2011 (2010), which held that

8

juveniles who did not commit a homicide cannot be sentenced to life without parole, is retroactive to his case, and sought authorization to file a successive § 2255 motion in the District Court (JA 416–17). As discussed *infra*, Williams' "signature block" and "Certificate of Service" dated this motion May 2, 2011 (JA 418).

On June 14, 2012, the government filed an opposition to the motion (GSA 57). The government argued that the motion was untimely under 28 U.S.C. § 2255(f)(3), because it was filed more than a year after *Graham*. *See* 28 U.S.C. § 2255(f)(3).

On July 9, 2012, Williams filed a reply to the government's opposition (JA 420). In his reply, Williams argued that his motion was timely under the prison mailbox rule (*id.* 420–22). He claimed that he delivered his petition to "the proper prison authorities" on May 2, 2011 — within § 2255(f)(3)'s one-year statute-of-limitation period (JA 421). Williams' reply attached an "Affidavit in Support," in which Williams swore that: (1) he delivered his petition to "the legal mailroom at U.S.P. Atwater on [M]ay 2nd, 2011 with correct prepaid first class postage," and (2) he was told by the prison's mailroom supervisor that "U.S.P. Atwater do[es] not log outgoing first class legal mail" (JA 423).

9

On July 12, 2012, Williams filed a "Notice of Authority," in which he argued that, notwithstanding his reliance on *Graham*, *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which banned mandatory life in prison without the possibility of parole for juvenile homicide offenders, also established a new rule made retroactive to collateral cases (GSA 65). Williams maintained that, because *Miller* was decided on June 25, 2012, his petition was timely (*id.*).

On August 2, 2012, Williams filed another "Notice of Authority," in which he pointed out that *In re Sparks*, 657 F.3d 258 (5th Cir. 2011), and *In re Evans*, 449 Fed. App'x. 284 (4th Cir. 2011), held that *Graham* is retroactive to matters on collateral review (GSA 66).

On August 7, 2012, this Court issued an Order in which it asked the government to address three issues: (1) whether Williams' "Certificate of Service" suffices to establish the motion's timeliness under 28 U.S.C. §2255(f)(3), (2) whether *Graham* is retroactive to matters on collateral review, and (3) whether *Graham*'s holding applies to Williams' case (GSA 67).

On October 5, 2012, the government filed a supplement to its opposition to Williams' motion (JA 425). The government argued that

the motion should be denied because: (1) it was untimely, and (2) while *Graham*'s holding may be retroactive, *Graham* is inapplicable to Williams' case (JA 431–443).

On January 10, 2013, the Court appointed Williams counsel and referred his motion to a merits panel. The Court asked the parties to brief the following two issues:

- whether petitioner's certificate of service, included in the petition for leave to file, complies with the requirements set forth in Fed. R. App. P. 25(a)(2)(C), such that the petition is timely under 28 U.S.C. § 2255(f)(3); and

- whether the Supreme Court's decision in *Graham v. Florida*, 130 S. Ct. 2011 (2010), is retroactive to cases on collateral review and, if so, whether the reasoning or rationale behind *Graham* bears on a conspiracy commencing years before the petitioner is an adult.

(GSA 75). On June 14, 2013, counsel for Williams filed an opening brief.

## B.    The Motion Based on *Miller v. Alabama* (Case No. 13-3060)

On June 24, 2013, Williams, through counsel, filed another motion for authorization to file a second or successive motion under 28 U.S.C. § 2255. In this latest motion, Williams argued that *Miller* is retroactive to collateral matters, and that he should be granted authorization to file a successive § 2255 petition based on *Miller*.

11

On July 29, 2013, following the government's request to consolidate Williams' two motions, and his opposition to that request, this Court consolidated the motions. The Court asked the parties to brief the following two issues:

- whether petitioner's Certificate of Service, included in the petition for leave to file, complies with the requirements set forth in Fed. R. App. P. 25(a)(2)(C), such that the petition is timely under 28 U.S.C. § 2255(f)(3); and

- whether the Supreme Court's decision in *Miller v. Alabama*, 132 S. Ct 2455 (2012), is retroactive to cases on collateral review and, if so, whether the reasoning or rationale behind *Miller* bears on a conspiracy commencing years before the petitioner becomes an adult.

(GSA 77). On August 21, 2013, Williams filed his supplemental brief.

## SUMMARY OF ARGUMENT

This Court should deny Williams authorization to file successive § 2255 motions based on the Supreme Court's holdings in *Graham* and *Miller*. Williams' *Graham* petition is untimely, because he filed it more than one-year after the Supreme Court issued its decision in *Graham*. His efforts to invoke the prison mailbox should be rejected.

12

Even if Williams' *Graham* petition were timely, however, the Court should still deny it. While *Graham* is retroactive to collateral matters, *Graham* does not apply to life-without-parole sentences for defendants, like Williams, who joined RICO and drug conspiracies while a juvenile but who continued to participate in those conspiracies well into adulthood.

The Court should also deny Williams' *Miller* petition. Although *Miller*'s holding is retroactive, it merely held that juvenile homicide offenders cannot be sentenced to a mandatory term of life without parole. Thus, *Miller* has no application to defendants, like Williams, who were convicted of criminal conduct that began during their juvenile years but extended into adulthood. Further, to the extent Williams cites *Miller* because it re-affirmed *Graham*, his petition does not rely on a "new rule . . . that was previously unavailable," a necessary prerequisite for a successive motion under 28 U.S.C. § 2255(h)(2).

## ARGUMENT

Under 28 U.S.C. § 2255(h), a federal inmate must obtain authorization from the appropriate court of appeals "as provided in section 2244" to file a second or successive § 2255 motion in the district

13

court. The court of appeals must certify that the successive motion "contain[s]": (1) newly discovered evidence, or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h); *see also* 28 U.S.C. § 2244(b)(2)(A)("the [state] applicant [must] show[] that the claim *relies on* a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" (emphasis added)).[4] The court should consider "whether an application for authorization to file a second § 2255 motion in the district court makes a *prima facie* showing that the petitioner is entitled to relief[.]"[5] *In re Smith*, 285 F.3d 6, 7 (D.C. Cir. 2002).

---

[4] As Williams acknowledges (Br. 32 n.12), although the wording of § 2255(h)(2), which governs federal inmates, is slightly different from the wording of § 2244(b)(2)(A), which governs state inmates, this Court has considered the sections to be materially identical. *See In re Zambrano*, 433 F.3d 886, 887 n.1 (D.C. Cir. 2006)("The relevant portion of § 2244(b)(2)(A) is identical to that portion of § 2255 implicated in this case . . . .").

[5] *See also In re Hearn*, 418 F.3d 444, 444–45 (5th Cir. 2005)("Hearn must make a *prima facie* showing that . . . his claim relies on a [new rule] and . . . that[,under *Atkins v. Virginia*, 536 U.S. 304 (2002),] he is mentally retarded."); *In re Holladay*, 331 F.3d 1169, 1173 (5th Cir. 2003)("[Retroactivity] requirements merely represent the minimum showing that Holladay must make if we are to permit him to file a

(continued . . . )

14

Under § 2255(f)(3), a petitioner has one year from the date the Supreme Court "initially recognized" a new rule to file a successive § 2255 motion. *See Dodd v. United States*, 545 U.S. 353, 359 (2005). Williams argues that, in determining whether to authorize the filing of a successive § 2255 motion, courts of appeals do not have discretion to consider the timeliness of the motion under § 2255(f) (Br. 15–17, 29–32). The Circuits are divided on the issue. The Fifth and Eleventh Circuits permit consideration of the time limit as part of the gatekeeping determination.[6] The Seventh Circuit has gone further, holding that a

---

(. . . continued)

second or successive petition for a writ of habeas corpus. In this case, we find it manifestly obvious that in order to make a *prima facie* showing that he is entitled to file a second or successive petition based on Supreme Court's decision in *Atkins*, Holladay also must demonstrate that there is a reasonable likelihood that he is in fact mentally retarded.")(citation omitted); *id.* 1173 n.1 ("Were it otherwise, then literally any prisoner under a death sentence could bring an *Atkins* claim in a second or successive petition regardless of his or her intelligence. No rational argument can possibly be made that this result is appropriate under § 2244(b).").

[6] *See In re Lewis*, 484 F.3d 793, 796–98 (5th Cir. 2007)(denying a state prisoner's application to file a successive habeas corpus petition as time-barred and concluding that the prisoner was not entitled to equitable tolling of the AEDPA statute of limitations); *In re Wilson*, 442 F.3d 872, 874–78 (5th Cir. 2006)(state prisoner's application to file successive habeas petition was time-barred, but "rare and extraordinary

(continued . . . )

prisoner seeking authorization to file a successive collateral attack "must demonstrate that the petition is timely." *Outlaw* v. *Sternes*, 233 F.3d 453, 455–56 (7th Cir. 2000).[7]

Williams relies on *In re McDonald*, 514 F.3d 539 (6th Cir. 2008) (Br. 16–18). In *McDonald*, the Sixth Circuit held that any question about a petitioner's compliance with the AEDPA statute of limitations should be left to the district court. 514 F.3d at 543–44. But in *McDonald*, the Sixth Circuit reserved the timeliness issue for the district court because "it [was] difficult to determine whether McDonald would run afoul of the one-year statute of limitations[.]" *Id.* 543. While it reasoned that, under § 2244(b)(4), which governs state inmates' successive petitions, the timeliness question was assigned to the district

_____

(. . . continued)

circumstances" justified equitable tolling of the limitations period); *see also In re Hill*, 437 F.3d 1080, 1082–83 (11th Cir. 2006)(denying a state prisoner's application to file a second or successive petition on the ground that it was untimely).

[7] *See also Hare* v. *United States*, 688 F.3d 878, 881 (7th Cir. 2012) (denying application to file successive Section 2255 motion as "time-barred under § 2255(f)"); *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012)(*per curiam*)("When reviewing an application for authorization to file a second or successive collateral attack, the timeliness rules that govern the underlying collateral attack . . . generally apply.").

16

court, not the court of appeals, *see id.*, *McDonald* ignored the fact that § 2244(b)(4) does not give the district court the exclusive right to decide the issue of timeliness. Moreover, § 2244(b)(3)(C) merely provides that the court of appeals "may" authorize a successive motion if the prisoner makes a *prima facie* showing that the "requirements of this subsection" (*i.e.*, newly discovered evidence or a new rule of constitutional law) were met. Section 2244(b)(3)(C) does not provide that the court of appeals "must" authorize a successive petition when a *prima facie* showing has been shown and ignore a petition's untimeliness. And there is no language in § 2244 (or § 2255) that bars a court of appeals from denying a petition for authorization to file a successive motion as untimely filed.

The Supreme Court has not addressed the specific issue of whether courts of appeals may consider the timeliness of a petition for authorization to file a successive motion under § 2244 or § 2255. Recently, however, in *Wood v. Milyard*, the Supreme Court held that, even where a district court and the government did not address the timeliness of an *initial* habeas petition, "courts of appeals, like district court, have the authority — though not the obligation — to raise a forfeited timeliness defense on their own initiative." 132 S. Ct. 1826,

17

1834 (2012). Although *Wood* addresses "initial" petitions for collateral relief, nothing in AEDPA (or *Wood*) prohibits courts of appeals from undertaking the same analysis when exercising their gatekeeping roles under § 2244(b)(3)(C).

Indeed, "[a]ffording federal courts leeway to consider a forfeited timeliness defense [is] appropriate," the Supreme Court explained in *Wood*, "because AEDPA's statute of limitations . . . 'implicat[es] values beyond the concerns of the parties.'" *Wood*, 132 S. Ct. at 1833 (quoting *Day* v. *McDonough*, 547 U.S. 198, 205 (2006)). *See Day*, 547 U.S. at 205–06 ("The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." (internal quotation marks omitted)). So long as the court "accord[s] the parties fair notice and an opportunity to present their positions," it may consider the statute of limitations defense and "determine whether the interests of justice would be better served by

18

addressing the merits or by dismissing the petition as time barred."[8]
*Day*, 547 U.S. at 210–11 (internal quotation marks omitted). This Court
has, of course, afforded "the parties fair notice and an opportunity to
present their positions[.]"

Accordingly, this Court has the discretion to decide: (1) whether
Williams' petitions are timely and (2) whether his petitions rely on "a
new rule of constitutional law, made retroactive to cases on collateral
review by the Supreme Court, that was previously unavailable." 28
U.S.C. § 2255(h). These are the very issues that this Court has asked
the parties to address.

## I.    Williams' *Graham* Petition Is Untimely

Williams' *Graham* petition is untimely. The Supreme Court
decided *Graham* on May 17, 2010. Williams thus had one year from
that date to file his petition: on or before May 17, 2011. *See* 28 U.S.C.

---

[8] The Supreme Court emphasized that its holding did not apply where
the government had deliberately waived reliance on the time limit. *See*
*Wood*, 132 S. Ct. at 1832 n.4, 1833–34 & n.5 (distinguishing waiver
from forfeiture); *Day*, 547 U.S. at 202 (it would be "an abuse of
discretion to override a State's deliberate waiver of a limitations
defense"). Thus, if a petitioner had a meritorious, but untimely,
*Graham* claim, the government would waive any objection to the
petition's untimeliness. But this is not such a case.

§ 2255(f)(3). His *Graham* petition was filed on May 31, 2012, over one year late. Therefore, the petition is untimely, unless Williams can invoke the "prison mailbox" rule, codified in Fed. R. App. P. 25(a)(2)(C).[9] *See also Houston v. Lack*, 487 U.S. 266, 267 (1988).

### A.    Williams' "Signature Block" and "Certificate of Service" Do Not Comply With The Prison Mailbox Rule

Williams cannot invoke the "prison-mailbox" rule to bring his *Graham* petition into compliance with § 2255(f)(3)'s one-year limitation period. Fed. R. App. P. 25(a)(2)(C), enacted in response to *Houston*, provides:

> A paper filed by an inmate is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

The Tenth Circuit has described the requirements as follows:

---

[9] Fed. R. App. P. 4(c) provides identical requirements as in Fed. R. App. P. 25(a)(2)(C) for the filing of notices of appeal. Hence, the government's brief cites to cases interpreting Rule 4(c) and Rule 25(a)(2)(C).

An inmate can establish the date on which he or she gave the papers to be filed with the court to a prison official in one of two ways. First, if the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule. The second mechanism for establishing a filing date for purposes of the mailbox rule must be used if the inmate does not have access to a legal mail system – or if the existing legal mail system is inadequate to satisfy the mailbox rule. In either of those circumstances, the mandatory method by which a prisoner . . . proves compliance with the mailbox rule is to submit a declaration [in compliance with 28 U.S.C. § 1746] or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid.

*Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005)(internal quotation marks and citations omitted; alterations in original)(analyzing Fed. R. App. P. 4).

Williams points (at 19–21) to "the date appearing in the signature block" of his *Graham* motion (May 2, 2011) and his *Graham* motion's "Certificate of Service." His Certificate of Service states that he "serve[d] the [C]ourt of [A]ppeals for the [D]istrict of Columbia at 333 [C]onstitutional [A]ve[,] [N.W.,] Washington, D.C.[,] 20001[,] on this 2nd day of [M]ay 2011[,] one original and 2 copies" (JA 418–19).

Although May 2, 2011 falls within § 2255(f)(3)'s one-year period, neither "the date appearing in the signature block" nor the "Certificate

of Service" is a 28 U.S.C. § 1746 declaration[10] or a notarized statement. Neither complies with § 1746's requirement of a declaration, see note 10, and neither is notarized. Thus, for this reason alone, both fail to comport with Rule 25(a)(2)(C).

There are additional reasons why Williams' "signature block" and his "Certificate of Service" do not comply with Rule 25(a)(2)(C). Neither provides: (1) "the date of deposit," (2) "that first-class postage has been prepaid," or (3) that the petition was deposited in the prison's internal mailing system.[11] For these additional reasons, Williams' certificate of

---

[10] 28 U.S.C. § 1746 provides: "Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . (2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'"

[11] *See United States v. Ceballos-Martinez*, 387 F.3d 1140, 1145 (10th Cir. 2004)("Mr. Ceballos-Martinez's notice of appeal has neither a declaration of compliance nor a notarized statement, and it fails to affirm that he pre-paid first-class postage for any of his filings. . . .

(continued . . . )

service and, certainly, his "signature block," do not establish, under Rule 25(a)(2)(C), that his *Graham* petition was "filed" on May 2, 2011.

There is no merit to Williams' argument (at 21) that Rule 25(a)(2)(C) does not require a "declaration" or a "notarized statement," when a prison lacks a system for legal mail. The Tenth Circuit squarely rejected this reading of the prison mailbox rule in *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1145 (10th Cir. 2004).[12] Although Rule 25(a)(2)(C) provides that, absent a prison legal mail system, "[t]imely filing *may* be shown by a declaration . . . or notarized statement," the term "may" merely "references a choice between the means of proving compliance — not an option to ignore the provisions of the third sentence altogether." *Id.* 1144. Williams' "permissive

---

(. . . continued)
Because we find that Mr. Ceballos-Martinez failed to employ the methods provided by Congress to establish compliance with the mailbox rule, we dismiss for lack of subject-matter jurisdiction."); *United States v. Craig*, 368 F.3d 738, 740-41 (7th Cir. 2004)("The postage requirement is important:  mail bearing a stamp gets going, but an unstamped document may linger."); *United States v. Smith*, 182 F.3d 733, 734 n.1 (10th Cir. 1999)(mailbox rule does not apply where defendant did not "'state that first-class postage has been prepaid,'" quoting Fed. R. App. P. 4(c)(1)).

[12] *Ceballos-Martinez* analyzed Fed. R. App. P. 4(c)(1), which provides identical language as in Rule 25(a)(2)(C).

interpretation of the Rule would render its specific requirements mere surplusage, contrary to a cardinal canon of statutory construction." *Id.* 1145. Although courts generally construe a *pro se* litigant's pleading liberally, courts "have never interpreted them to give litigants — even *pro se* litigants — *carte blanche* to disregard congressionally established procedural rules." *Id.*[13]

---

[13] For the proposition that the date he "signed" the motion sufficiently establishes the date he deposited his motion with prison authorities, Williams also cites (at 19–20) *Baker v. United States*, 670 F.3d 448, 451 n.2 (3d Cir. 2012)("presum[ing]" inmate filed his motions date he signed them, and nonetheless affirming district court's dismissal), *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)("assum[ing,]" in the absence of contrary evidence, inmate mailed motion on date he signed it); *United States v. Peterson*, 916 F. Supp. 2d 102, 104 (D.D.C. 2013)("assum[ing,]" in the absence of contrary evidence, inmate mailed his motion on date he signed it, and nonetheless dismissing motion as untimely); and *Davis v. United States*, 329 F. Supp. 2d 560, 562 n.2 (S.D.N.Y. 2004)("deem[ing]" motion filed on date provided in certificate of service and nonetheless dismissing motion as untimely). However, these cases concerned filings in district courts and did not squarely address the issue presented in this case.

Appellate Rules 25(a)(2)(C) and 4(c) were enacted to place limits on the prison mailbox rule adopted in *Houston*, and inmates, like Williams, cannot simply ignore these limits. *See United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004)("Rule 4 was rewritten in 1993 (and revised in 1998) not only to make the mailbox rule official but also to impose some limits."); *Baker*, 670 F.3d at 457 ("*Houston* teaches that we can, in some instances, read a statute to take into account delays that

(continued . . . )

24

**B.     Notwithstanding His "Affidavit In Support," Filed More Than a Year After He Purportedly Gave His Petition to Prison Authorities, Williams Did Not Diligently Follow-Up on His *Graham* Petition**

On July 9, 2012, following the government's initial request to dismiss Williams' *Graham* petition as untimely, Williams filed an "Affidavit In Support," in which he "swear[s,] under 28 U.S.C. § 1746 (sic), And oath and under the penalty of perjury[,]" that he delivered his petition to "the legal mailroom at U.S.P. Atwater on [M]ay 2nd, 2011

---

(. . . continued)
*pro se* prisoners face. But any such reading must not run contrary to the other terms of the statute.").

In any event, in *Washington* and *Peterson*, the court expressly noted that it found the signed date sufficient in the absence of "evidence to the contrary." *See Washington*, 243 F.3d at 1301; *Peterson*, 916 F. Supp. 2d at 104. Certainly, a motion — like Williams' — which reached the courthouse more than *one year* after the inmate purportedly signed it, and that prisoner's year-long silence, strongly contradict his representation about the date he signed and mailed the motion. *See Stoot v. Cain*, 570 F.3d 669, 671–72 (5th Cir. 2009)(*per curiam*)("A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent."); *cf. Baker*, 670 F.3d at 451 n.2 (motions entered on court's docket 8 days after inmate signed it); *Washington*, 243 F.3d at 1300 (motion was received by clerk 15 days after inmate signed it); *Davis*, 329 F. Supp. 2d at 562 n.2 (motion filed in court 9 days after date provided in certificate of service).

25

with correct prepaid first class postage" (JA 423). Although in its order of January 10, 2013, this Court did not ask the parties to address the timeliness of Williams' "Affidavit In Support," courts have recognized that prisoners' affidavits need not accompany their original pleadings. *See Christmas v. Oklahoma*, 290 Fed. App'x 126, 129 (10th Cir. 2008)(unpublished); *Grady v. United States*, 269 F.3d 913, 917 (9th Cir. 2001).[14] Accordingly, we address this issue.

Even if Williams' "Affidavit In Support" complies with Fed. R. App. P. 25(a)(2)(C), and even if this Affidavit is construed to mean that Williams delivered his *Graham* petition to prison officials on May 2, 2011, it should not excuse his lack of diligence in following up on his petition after he gave it to prison officials. As the Ninth Circuit has held, "A prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, *so long as* he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time." *Huizar v. Carey*, 273 F.3d 1220, 1223 (9th

---

[14] Although a prisoner's notarized statement or declaration need not accompany his filing, a court may refuse to credit the statement "due to a lengthy and unwarranted delay in submission." *Grady*, 269 F.3d at 918.

Cir. 2001)(emphasis added); *see also Stoot v. Cain*, 570 F.3d 669, 672
(5th Cir. 2009)(*per curiam*)("Under [the prison mailbox] rule, it is of
course incumbent upon the petitioner to diligently pursue his
petition.").[15]

---

[15] Several Circuits have not adopted *Huizar*'s "diligence" requirement.
*See United States v. McNeill*, No. 12-6129, 2013 WL 1811904, at *4 (4th
Cir. May 1, 2013)(unpublished); *Ray v. Clements*, 700 F.3d 993, 1012
(7th Cir. 2012); *Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006).
As we have explained *supra*, a petition is deemed "filed" once a prisoner
delivers it to prison officials for mailing. Without a diligence
requirement, a prisoner (like Williams) could claim — any number of
years after AEDPA's one-year statute of limitations had passed — that
his late-filed petition had been timely delivered to prison officials. This
would run counter to the AEDPA statute of limitation's purpose. *See
Day*, 547 U.S. at 205–06 ("The AEDPA statute of limitation promotes
judicial efficiency and conservation of judicial resources, safeguards the
accuracy of state court judgments by requiring resolution of
constitutional questions while the record is fresh, and lends finality to
state court judgments within a reasonable time.") (internal quotation
marks omitted). Further, the lack of a diligence requirement could also
have the unintended consequence of having a petition technically
"pending" before the court for a *substantial* period of time before the
clerk's office actually receives it, since a petition is deemed "filed" once
it is handed to prison officials. In such a circumstance, this Court could
not comply with AEDPA's requirement that it "shall grant or deny the
[petition] not later than 30 days after the *filing* of the motion." 28
U.S.C. § 2244(b)(3)(D)(emphasis added). Therefore, for these reasons,
the "diligence" requirement is appropriate in the AEDPA context. *Cf.
City of Waukesha v. E.P.A.*, 320 F.3d 228, 245 (D.C. Cir. 2003)("strictly
applying the plain language of the [statute], as petitioners advocate,
would lead to the absurd results that the doctrine is intended to avoid
in the first place").

Williams was not diligent in following up on his petition when, for more than a year after he purportedly "filed" it, he failed to receive any response from the government or the Court. In contrast to the "steady stream of correspondence" that the petitioner in *Huizar* sent to the court to follow up on his petition, Williams does not dispute that he stood silent for a full year after he allegedly sent his request to this Court. Thus, this Court can readily conclude that Williams was not diligent. *Cf. United States v. McDade*, 699 F.3d 499, 505 (D.C. Cir. 2012)(holding that, where "facts regarding the filing of [petitioner's] amended § 2255 motion are uncontested," remand was "unnecessary" and court "proceed[ed] to address whether equitable tolling applies to his [collateral] claim").

The fact that Williams is no stranger to habeas litigation makes his yearlong silence all the more notable. Before filing his *Graham* petition, Williams had requested authorization to file numerous successive § 2255 motions. See *supra* note 2. His experience with filing such motions likely alerted him to the fact that, under 28 U.S.C.

28

§ 2244(3)(D), the Court had 30 days to decide his motion.[16] Yet, Williams stood silent for more than a year when he failed to receive any response from either the Court or the government. That neglect amounts to a lack of diligence and abandonment of his petition. *Cf. McDade*, 699 F.3d at 505 ("[Petitioner's] diligence in pursuing his claim and his counsel's failure to abide by his requests demonstrate extraordinary circumstances warranting application of equitable tolling to his ineffective assistance of trial counsel claim in his amended § 2255 motion.").

## II.    *Graham* Is Retroactive, But It Does Not Apply to Williams

### A.    The Retroactivity of *Graham*

The government agrees that *Graham* is retroactive to cases on collateral review. *See In re Sparks*, 657 F.3d 258 (5th Cir. 2011); *In re Moss*, 703 F.3d 1301 (11th Cir. 2013).

---

[16] Notably, on September 10, 2012, when Williams opposed, *pro se*, the government's motion for an extension of time to file an opposition to his motion, he referred to "2244(3)(D)" and stated, "now the government wants 125 days and *not the 30 days that's mandated by the statute*" (GSA 68)(emphasis added).

### B.     Williams' Proposed Successive § 2255 Motion Does Not "Rely On" *Graham*

*Graham* held, for the first time, that "for a juvenile offender who did not commit homicide[,] the Eighth Amendment forbids the sentence of life without parole." *See Graham*, 130 S. Ct. at 2030.[17] While this holding applies retroactively to collateral cases, Williams' petition should nonetheless be denied because Williams' offenses of conviction extended into his adulthood.

Section 2255(h)(2) provides that a proposed successive motion must "contain" a new rule of constitutional law that was made retroactive and previously unavailable. *See also* § 2244(b)(2)(A)(proposed successive motion must "rely on" a new rule). Although *Graham* adopted a new constitutional rule that was previously unavailable, *see In re Sparks*, 657 F.3d at 260, Williams does not actually "rely on" *Graham*. Instead, he relies on a proposed *extension* of *Graham*'s holding. By its plain language, § 2255(h)(2) does

---

[17] *See also In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011)("[*Graham*] was certainly the first recognition that the Eighth Amendment bars the imposition of life imprisonment without parole on non-homicide offenders under age eighteen.").

not permit courts of appeals to authorize a successive motion to give a petitioner an opportunity to argue for an *extension* of a "new rule of constitutional law."

Rejecting a case-by-case Eighth Amendment analysis of life-without-parole sentences for juveniles who committed non-homicide offenses, *Graham* adopted a "categorical" rule for those defendants. *See Graham*, 130 S. Ct. at 2031–32. The Court reasoned that, "[b]ecause '[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood,' *those who were below that age when the offense was committed* may not be sentenced to life without parole for a nonhomicide crime." 130 S. Ct. at 2030 (quoting *Roper v. Simmons*, 543 U.S. 551, 574 (2005))(emphasis added).

Graham was 16 years old when he committed his criminal offenses (attempted armed robbery and burglary). *See Graham*, 130 S.Ct at 2018. In contrast, Williams was convicted for participating in a conspiracy that he joined in his juvenile years and which indisputably continued into his adulthood — from "May 1983 through March 26, 1991," when Williams was 21 years old. See *supra* pp. 2–3, 5–8.

31

Seeking to extend *Graham*'s holding to encompass adult criminal conduct, Williams argues that "*Graham* neither explicitly nor implicitly carved juvenile continuing crimes out of its holding" (Br. 34). But Williams has the burden to show that his petition relies on *Graham*. *See* 28 U.S.C. §§ 2244(b)(2)(A), 2255(h)(2). And nothing in *Graham* suggests the Court was considering juveniles whose criminal conduct extended into adulthood.

In fact, quite the opposite is true. *Graham* expressly noted that "[t]he instant case concerns *only* those *juvenile* offenders sentenced to life without parole solely for a nonhomicide offense." 130 S. Ct. at 2023 (emphases added). Underscoring that point, the Court later amended its original opinion to clarify that inmates whose "juvenile nonhomicide crime [was not] completed before the age of 18" were not included in its analysis of the "national consensus" — an important part of its Eighth Amendment analysis — on life-without-parole sentences for juveniles. The Court clarified:

> When issued, the Court's opinion relied on a report from the BOP stating that there are six juvenile nonhomicide offenders serving life without parole in the federal system. The Acting Solicitor General subsequently informed the Court that further review revealed that none of the six prisoners referred to in the earlier BOP report is serving a

32

> life without parole sentence *solely for a juvenile nonhomicide crime completed before the age of 18*. The letter further stated that the Government was not aware of any other federal prisoners serving life without parole sentences *solely* for juvenile nonhomicide crimes. The opinion was amended in light of this new information.

*Graham*, 130 S. Ct. at 2024 n.* (citations omitted; emphases added).[18]

Therefore, *Graham* was not concerned with, much less prohibiting, the imposition of a life-without-parole sentence on a defendant, like Williams, whose criminal conduct extended beyond his 18th birthday.

At bottom, Williams does not dispute that *Graham* fails to address life-without-parole sentences for conspiracies straddling the age of majority. He only offers arguments for why *Graham* should extend to conspiracies reaching beyond the line it drew — and to his conspiracies in particular (Br. 33–37).[19]

---

[18] Williams responds that the Court noted that "'these statistics [were] not precise'" (Br. 34)(quoting *Graham*, 130 S.Ct. 2024). But that is irrelevant. The point is that the Court's amendment to its opinion reveals what class of individuals was pertinent to its Eighth Amendment analysis.

[19] For instance, Williams contends that "the only overt act that the Government was required to prove for the drug conspiracy count was that [he] joined the conspiracy," when he was 15 years old (Br. 37). Irrespective of what the government was "required to prove," the evidence showed that Williams' role in the conspiracy was more than a "one-time act" (Br. 37). See *supra* pp. 5–8.

(continued . . . )

33

Williams has failed to point to any case that applies *Graham* to a defendant whose crime continued beyond his 18th birthday. *In re Evans*, 449 Fed. App'x 284 (4th Cir. 2011), does not support Williams' claim. In *Evans*, the Fourth Circuit granted authorization to file a successive habeas application on the basis of *Graham*. Although the court found that Evans "ha[d] made a '*prima facie* showing' that his

---

(. . . continued)

Williams also complains (at 37) that his only post-majority RICO predicate act (Racketeering Act 33) was inconsistent with the jury's acquittal on the same conduct in Count 24. But, in the direct appeal, this Court rejected the notion that this somehow affected the legitimacy of Williams' RICO conspiracy conviction, which indisputably included adult conduct. *See Thomas*, 114 F.3d at 251 ("[E]ven assuming that the verdicts are inconsistent, we see no reason to depart from the established rule that inconsistent verdicts rendered in the same proceeding ordinarily cannot be upset.").

In any event, notwithstanding when Williams' predicate or overt acts occurred, "[s]ince conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law 'through every moment of [the conspiracy's] existence[.]'" *Smith v. United States*, 133 S. Ct. 714, 719 (2013)(citation omitted; alteration in original); *see also Thomas*, 114 F.3d at 267 ("conspiracy is an ongoing offense that lasts, absent one's affirmative withdrawal from the enterprise" (internal quotation marks omitted)). As this Court noted on direct appeal when rejecting Williams' claim that he did not participate in the conspiracy after October 22, 1990, Williams "points to no evidence . . . that demonstrates an affirmative effort to withdraw from the conspiracy by communicating that intent to his co-conspirators." *Thomas*, 114 F.3d at 267.

'claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,'" the court failed to explain its decision. *Id.* However, a review of the briefs in *Evans* reveals that, unlike here, there was a factual dispute as to whether Evans was sentenced for criminal conduct completed before the age of 18. Evans argued that his "convictions and life sentence are based *solely* on juvenile, non-homicide conduct." *See* Brief of Movant Ronald Evans, *In re Evans*, No. 11-194, 2011 WL 2731764, at *4 (4th Cir. July 14, 2011)(emphasis added). The government disputed that representation, arguing that Evans "had ongoing criminal liability for the conspiracy *after* his 18th birthday." Brief of the United States, *In re Evans*, No. 11-194, 2011 WL 3205616, at *31 (4th Cir. July 28, 2011)(emphasis added). Indeed, unlike Williams, Evans did not argue that *Graham* was applicable to those cases where the inmate was sentenced for a conspiracy straddling into adulthood. *See* Reply Brief, *In re Evans*, No. 11-194, 2011 WL 3473234, at *2 ("Mr. Evans does not contend that if he committed offenses as an adult, *Graham* still applies. Rather, Mr. Evans contends that the conduct that condemned him was committed *entirely* as a juvenile, and

35

thus he falls within the core ambit of *Graham* and is entitled to relief."
(emphasis added)).

Unlike the petitioner in *Evans*, Williams does not (and cannot) dispute that he was sentenced for a conspiracy that he carried into his adulthood. The jury's verdict and this Court's decision in Williams' direct appeal make clear that Williams was convicted and sentenced for a conspiracy that continued well into his adulthood.[20] *See Thomas*, 114 F.3d at 262.

Accordingly, while *Graham* is retroactive to cases on collateral review, Williams does not in fact "rely on" *Graham* because *Graham*'s holding does not extend to conspiracies straddling the age of majority. Williams, therefore, is not "entitled to relief" on the basis of *Graham*, and his petition should be denied. *See In re Smith*, 285 F.3d at 7.

---

[20] The remaining cases that Williams cites (Br. 28) also involved criminal offenses committed before the petitioner's 18th birthday. *See In re Moss*, 703 F.3d 1301, 1302 (11th Cir. 2013)("based on conduct committed while he was a juvenile"), *In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011)(16 years old), *In re Stallings*, No. 11-13016-I, at *2 (11th Cir. Jul. 21, 2011)(17 years old).

### III.  *Miller*'s Holding Is Retroactive, But It Does Not Apply To Williams

Williams' petition based on *Miller* should also be denied. Although *Miller* is retroactive to cases on collateral review, Williams does not actually rely on *Miller*'s holding. He cites *Miller* merely because it reaffirmed *Graham*'s holding. In that sense, *Miller* is not a "new rule of constitutional law . . . that was previously unavailable." 28 U.S.C. § 2255(h)(2).

### A.  The Retroactivity of *Miller*

The government agrees that *Miller* is retroactive to cases on collateral review. *See Johnson v. United States*, 720 F.3d 720, 721 (8th Cir. 2013); *Alejandro v. United States*, No. 13-CIV-4364, 2013 WL 4574066, at *1 (S.D.N.Y August 22, 2013); *People v. Morfin*, No. 1-10-3568, 2012 WL 6028634, at *11 (Ill. App. Ct. Nov. 30, 2012). *But see In re Morgan*, 713 F.3d 1365 (11th Cir.), *reh'g denied* 717 F.3d 1186 (11th Cir. June 10, 2013)(holding that "the Supreme Court has not held that *Miller* is retroactively applicable to cases on collateral review"); *Craig v. Cain*, No. 12-30035, 2013 WL 69128, *2 (5th Cir. Jan. 4, 2013)(same).

37

### B.  Williams Cites *Miller* Only To The Extent It Reaffirms *Graham*

Although *Miller* is retroactive, and Williams filed his *Miller* petition within one-year of that decision,[21] Williams does not "rely on" *Miller* for a "new rule . . . that was previously unavailable" to him. *See* 28 U.S.C. § 2255(h)(2). In *Miller*, the Supreme Court fused *Graham*'s views on the unique status of juvenile offenders with Eighth Amendment individualized-sentencing jurisprudence to forbid mandatory life-without-parole sentences for juvenile homicide defendants. The Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 132 S. Ct. at 2460.

Williams cites *Miller* only to the extent it reaffirmed *Graham*, and no more. Specifically, he argues that, under *Miller*, "the Eighth Amendment categorically forbids mandatory life without parole

---

[21] The Supreme Court issued *Miller* on June 25, 2012, and Williams electronically filed his *Miller* petition on June 24, 2013. Williams filed his Supplemental Brief, addressing his *Miller* petition, on August 21, 2013.

38

sentences for offenses committed by juveniles" (Supp. Br. 6). However, with respect to non-homicide juvenile offenders, of which Williams is one, *Miller* is not a "new rule . . . that was previously unavailable." 28 U.S.C. § 2255(h)(2). *Graham* initially recognized the principle that Williams cites *Miller* for: "The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Graham*, 130 S. Ct. at 2034. Indeed, this is why Williams has requested authorization to file a successive § 2255 motion on the basis of *Graham*. *See In re Williams*, 364 F.3d 235, 239 (4th Cir. 2004)("[C]onstitutional rules that were established at the time of the applicant's last PFA motion were not 'previously unavailable.'").

Further, because *Graham* "initially recognized" the principle that non-homicide juvenile offenders cannot be sentenced to life without parole, Williams cannot attempt to reset his one-year statute of limitations simply because *Miller* relies on *Graham*. The one-year statute of limitations runs from "the date on which the right asserted was *initially recognized* by the Supreme Court[.]" 28 U.S.C. § 2255(f)(3)(emphasis added).

In any event, just as Williams does not actually "rely on" *Graham* — because *Graham* does not address his sentences for an age-of-majority spanning conspiracy — he does not actually "rely on" *Miller*. *Miller* did not address life-without-parole sentences for defendants who entered a conspiracy in their juvenile years and exited in adulthood. At most, Williams can only argue for an extension of *Miller*. That is not a basis for a successive § 2255 motion. See *supra*.

Accordingly, Williams' *Miller* petition should be denied.

## CONCLUSION

WHEREFORE, the government respectfully submits that the Court deny Williams' motions for authorization to file a successive § 2255 motion.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
SUZANNE GREALY CURT
Assistant United States Attorneys

_____/s/_____
JAMES M. PEREZ, D.C. Bar #986382
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

41

## Certificate of Compliance with Rule 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(a)(7)(C) that this brief contains 9,015 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
_____
James M. Perez
Assistant United States Attorney

## Certificate of Service

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for petitioner, Christopher Rhee, Esq., Arnold & Porter LLP, 555 Twelfth Street, N.W., Washington D.C. 20004-1206, on this 15th day of October, 2013.

/s/
_____
James M. Perez
Assistant United States Attorney